Jeremy V. Richards (CA Bar No. 102300)
Teddy M. Kapur (CA Bar No. 242486)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:   jrichards@pszjlaw.com
          tkapur@pszjlaw.com

Attorneys for Richard M. Pachulski,
Chapter 11 Trustee

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>RANDALL WILLIAM BLANCHARD,<br><br>               Debtor. | Chapter 11<br><br>Case No. 8:14-bk-14105-SC<br><br>**FIFTH AMENDED PLAN OF REORGANIZATION PROPOSED BY CHAPTER 11 TRUSTEE FOR DEBTOR RANDALL WILLIAM BLANCHARD** |

# TABLE OF CONTENTS

**Page**

I. DEFINITIONS ............................................................................................................ 1

II. RULES OF INTERPRETATION ............................................................................ 15

III. PLAN OBJECTIVES............................................................................................... 16

IV. METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS; GENERAL
PROVISIONS ........................................................................................................... 17

    A.     General Rules of Classification ....................................................................... 17
    B.     Holder of Claims Entitled to Vote .................................................................. 17
    C.     Administrative Claims, Priority Tax Claims, and Professional Fee Claims........ 18

V. TREATMENT OF CLAIMS AND INTERESTS ................................................... 18

    A.     Allowance of Unclassified Claims (Administrative Claims, Priority Tax
Claims, and Professional Fee Claims) ............................................................ 19
         1.    Allowed Administrative Claims ........................................................... 19
         2.    Allowed Professional Fee Claims......................................................... 19
         3.    Allowed Priority Tax Claims ................................................................ 20
    B.     Treatment of Unclassified Claims  (Administrative and Priority Tax Claims) ... 20
         1.    Administrative Claims including Allowed Professional Fee Claims ...... 20
         2.    Priority Tax Claims .............................................................................. 21
    C.     Classification and Treatment of All Other Priority Claims (Class 1)................. 22
    D.     Classification and Treatment of Secured Claims (Class 2) ............................... 22
         1.    Class 2A................................................................................................ 22
         2.    Class 2B................................................................................................ 23
         3.    Class 2C ............................................................................................... 23
    E.     Classification and Treatment of Convenience Claims (Class 3) ........................ 23
    F.     Classification and Treatment of Unsecured Claims (Class 4) ............................ 24

VI. ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF  REJECTION BY ONE OR
MORE CLASSES OF CLAIMS.............................................................................. 25

    A.     Impaired Classes to Vote ................................................................................ 25
    B.     Acceptance by Class of Creditors ................................................................... 25
    C.     Cramdown ...................................................................................................... 25

VII. MEANS FOR IMPLEMENTATION OF THE PLAN ........................................ 25

    A.     Reconveyance and Conveyance of Interests.................................................... 25
         1.    Blanchard Enterprises ........................................................................... 25
         2.    Seasmoke Partners ............................................................................... 26
    B.     Continuation of the Estate and Vesting of Assets; Winding Up of Affairs........ 28
    C.     The Source of Distributions; Reserves ........................................................... 28
    D.     The Plan Administrator ................................................................................... 29
         1.    Appointment of the Plan Administrator................................................. 29
         2.    Powers and Authority of Plan Administrator......................................... 30
         3.    Retention and Compensation of Professionals ...................................... 33
         4.    Compensation of Plan Administrator .................................................... 34
         5.    Removal of Plan Administrator ............................................................ 34
         6.    Successor Plan Administrator ............................................................... 34
         7.    Records ................................................................................................ 35
         8.    Liability of the Plan Administrator........................................................ 35

|  | E. | The Oversight Committee | 36 |
|  | F. | Indemnification of the Plan Administrator | 37 |
|  | G. | Termination of the Trustee's Duties | 38 |
|  | H. | Termination of Duties; Closing of the Case | 38 |
|  | I. | Provision for Treatment of Disputed Claims | 39 |
|  | J. | Distribution of Property Under the Plan | 40 |
|  |  | 1. Manner of Cash Payments | 40 |
|  |  | 2. Setoff and Recoupment | 40 |
|  |  | 3. No *De Minimis* Distributions | 40 |
|  |  | 4. No Distributions With Respect to Disputed Claims | 41 |
|  |  | 5. Undeliverable, Unclaimed Non-Negotiated Distributions | 41 |

**VIII. LITIGATION** ........................................................................................................ 42

**IX. EXCULPATION, RELEASES AND RELATED PROVISIONS** ......................... 44

|  | A. | Limitation of Liability for Plan/Case Participants in Connection with the Chapter 11 Case, the Plan, Disclosure Statement and Related Matters | 44 |
|  |  | 1. Exculpation of Plan/Case Participants | 44 |
|  |  | 2. Injunction Prohibiting Actions Against Plan/Case Participants | 45 |
|  |  | 3. Indemnification of Plan/Case Participants | 45 |
|  | B. | Injunction Prohibiting Creditors' Actions Against the Estate and Related Assets | 46 |
|  | C. | Debtor's Verification of Assets | 47 |
|  | D. | Plan Administrator's Abandonment of Assets | 47 |
|  | E. | Limitation of Liability for the Debtor Releasees | 48 |
|  | F. | Discharge | 49 |

**X. OTHER PLAN PROVISIONS** ................................................................................. 49

|  | A. | Conditions Precedent to the Effective Date | 49 |
|  | B. | Termination of Creditors' Committee | 50 |
|  | C. | Living Expense Loan and Seasmoke Advance | 51 |
|  | D. | Executory Contracts and Unexpired Leases | 51 |
|  |  | 1. Rejection of Executory Contracts and Unexpired Leases | 51 |
|  |  | 2. Bar Date for Rejection Damage Claims | 51 |
|  | E. | Entry of a Final Decree | 52 |
|  | F. | United States Trustee Fees and Reports | 52 |
|  | G. | Post-Effective Date Effect of Evidences of Claims | 52 |
|  | H. | Recourse | 52 |
|  | I. | Section 1146 Exemption | 52 |
|  | J. | No Admissions | 53 |
|  | K. | Withdrawal of the Plan | 53 |
|  | L. | Severability of Plan Provisions | 53 |
|  | M. | Governing Law | 54 |
|  | N. | Retention of Jurisdiction | 54 |
|  | O. | Taxes and Withholdings | 56 |
|  | P. | Successors and Assigns | 57 |
|  | Q. | Saturday, Sunday, or Legal Holiday | 57 |

**XI. CONFIRMATION** .................................................................................................. 57

|  | A. | Plan Modification | 57 |
|  | B. | Nonconsensual Confirmation | 57 |

**XII. RECOMMENDATIONS AND CONCLUSION** ................................................... 58

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Richard M. Pachulski, in his capacity as the duly appointed Chapter 11 trustee (the "Trustee") in the Chapter 11 case of Randall William Blanchard (the "Debtor"), proposes the following plan of reorganization under section 1121(c) of the Bankruptcy Code.  The Trustee is referred to herein as the "Plan Proponent."  All Creditors and other parties-in-interest should refer to the Disclosure Statement for a discussion of the Debtor, his assets, the events leading up to the contemplated reorganization, the Chapter 11 Case, and risk factors, and for a summary and analysis of the Plan and certain related matters.  ***All Holders of Claims against the Debtor are encouraged to read the Plan, the Disclosure Statement and the related solicitation materials in their entirety before voting to accept or reject the Plan.***

Subject only to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Proponent expressly reserves the right to alter, amend or modify the Plan.

# I.

## DEFINITIONS

The following terms (which appear in this Plan as capitalized terms), when used in this Plan, have the meanings set forth below:

**"Administrative Claim"** means a claim for administrative costs or expenses that are allowable under section 503(b) of the Bankruptcy Code or 28 U.S.C. § 1930, including, without limitation, (a) the actual, necessary costs and expenses of preserving the Estate from after the Petition Date until the Effective Date; (b) compensation for legal, financial advisory, accounting, taxation and other services and reimbursement of expenses awarded or allowed under section 330(a) or 331 of the Bankruptcy Code incurred from after the  Petition Date until the Effective Date; (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930; (d) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court; and (e) any Administrative Tax Claims.

**"Administrative Claim Bar Date"** means the thirtieth (30th) day after the occurrence of the Effective Date, at 5:00 p.m. (Pacific Time), which shall be the date and time by which all parties, other than Professionals, asserting outstanding Administrative Claims incurred since the Petition

1   Date must timely file a claim or forever be barred from asserting any such claims, excluding all

2   requests for payment of Professional Fee claims or as otherwise provided under Bankruptcy Code

3   section 503(b)(1)(D).

4     **"Administrative Tax Claim"** means a Claim that is not an Allowed Secured Claim and that

5   a governmental unit asserts against the Debtor either for taxes or for related interest or penalties for

6   any tax period that, in whole or in part, falls within the period beginning on the Petition Date and

7   ending on the Effective Date.

8     **"Affiliate"** has the meaning set forth in section 101(2) of the Bankruptcy Code.

9     **"Allowed Claim"** means, with respect to any Claim or portion thereof (i) for which proof

10  thereof was filed within the applicable period of limitation fixed by the Bankruptcy Court in

11  accordance with Bankruptcy Rule 3003(c)(3), and as to which no objection to the allowance thereof,

12  or action to equitably subordinate or otherwise limit recovery with respect thereto, shall have been

13  interposed within the applicable limitations period fixed by the Plan, the Bankruptcy Code, the

14  Bankruptcy Rules or a Final Order, (ii) for which no proof thereof was filed, to the extent that such

15  Claim has been listed by the Debtor in the Schedules as liquidated in amount and not disputed or

16  contingent, and as to which no objection to the allowance thereof, or action to equitably subordinate

17  or otherwise limit recovery with respect thereto, shall have been interposed within the applicable

18  limitations period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order,

19  (iii) which arises from the recovery of property under section 550 or 553 of the Bankruptcy Code,

20  (iv) which is allowed under the Plan, or (v) which is allowed by a Final Order; provided, however,

21  that Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order

22  of the Bankruptcy Court shall not be considered "Allowed" hereunder.  Unless otherwise specified

23  herein or by order of the Bankruptcy Court, "Allowed Administrative Claim" or "Allowed Claim"

24  shall not, for any purpose under this Plan, include interest on such Administrative Claim or Claim

25  from and after the Petition Date.

26    **"Allowed Class '**'  Claim"** means an Allowed Claim in the particular class described.

27    **"Allowed Secured Claim"** means an Allowed Claim to the extent it is a Secured Claim.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**"Assets"** means any and all real or personal property of the Debtor of any nature, including, without limitation, any partnership interests, real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, inventory, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Causes of Action, books and records, any other general intangibles of the Debtor, and any and all proceeds of the foregoing, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including, without limitation, the following and all proceeds, products, rents and profits therefrom:  (i) property of the Estate within the scope of section 541 of the Bankruptcy Code; (ii) all Cash, cash equivalents, securities, investment instruments and similar assets currently under the possession and control of the Trustee or the Debtor; (iii) all litigation rights and claims of the Estate including, without limitation, all rights, claims and offsets that the Estate has, or may have against the Creditors, or any alleged creditor of the Estate; (iv) all Cash, cash equivalents, securities, investment instruments and similar assets currently under the possession and control of Blanchard Enterprises, including any Seasmoke Notes or other notes issued by Blanchard Enterprises as lender; (v) the Estate's 100% ownership interests in Seasmoke Partners, which are deemed to have been conveyed to the Estate on the Petition Date; (vi) 60% of the ownership interests in Black River Energy, LLC; (vii) 100% of the ownership interests in Meryton Management, Inc.; (viii) the Seasmoke Notes; (ix) the Estate's 50% interests in the Seasmoke Distributions; (x) the Living Expense Loan and the Estate's interests in the Seasmoke Advance; (xi) the Modified Car Wash Notes; (xii) all of the tax attributes of the Debtor, Blanchard Enterprises, Ranco Realty, and Seasmoke Partners including, without limitation, state and federal net operating loss carryforwards and capital loss carryforwards; (xiii) any assets of the Debtor undisclosed in the Schedules; and (xiv) any assets transferred, conveyed or reconveyed to the Estate on the Effective Date, except to the extent such Assets are defined as "Excluded Assets" in the Plan.

**"Available Cash"** means all Cash held by the Plan Administrator, on behalf of the Beneficiaries, on and after the Effective Date after appropriate provision is made for the Plan Reserves, which Cash includes, without limitation, Cash constituting the net proceeds from the

liquidation of other Assets. Available Cash shall not include Plan Reserves, pending the release thereof by the Plan Administrator pursuant to this Plan.

**"Ballot"** means the Ballot for accepting or rejecting the Plan.

**"Bank of America"** means Bank of America, N.A. or Merrill Lynch, Pierce, Fenner & Smith Incorporated.

**"Bank of America Loan"** means the loan made pursuant to that certain Loan Management Agreement, which is attached as Exhibit A to the *Amended Motion for Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* [Docket No. 302], made by Bank of America to Blanchard Enterprises in the amount of $25,463,445.89, for which Blanchard Enterprises is the primary obligor and the Debtor and his wife, Marynn, are guarantors.

**"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

**"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Central District of California, or such other court having jurisdiction over the Chapter 11 Case or any proceeding within, or appeal of an order entered in the Chapter 11 Case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as amended from time to time, promulgated by the United States Supreme Court pursuant to 28 U.S.C. § 2075.

**"Beneficiaries"** means the holders of Allowed Administrative Claims, Allowed Priority Tax Claims and Holders of Allowed Claims in the Classes established under the Plan.

**"Black River Energy"** means Black River Energy, LLC, which is one of the Seasmoke Projects, and it holds a participation interest in the sale or transfer of approximately 172 acres of wetlands in the City of Long Beach. Notwithstanding any documentation to the contrary, a 60% interest in Black River Energy is being contributed to the Estate pursuant to Article VII.A.2 below.

**"Blanchard Declaration"** means the *Declaration of Randall William Blanchard* attached hereto and filed in support of the Plan.

**"Blanchard Enterprises"** means Blanchard Enterprises LLC, of which the Debtor is the Manager.

**"Blanchard Enterprises Accounts"** means the accounts in the name of Blanchard Enterprises that are held at Bank of America that include, but are not limited to, the accounts

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   identified by the following account numbers: Account x4100, Account x4002, Account x7266,

2   Account x2134, Account x2133, Account x2136, and Account x7264.

3       **"Business Day"** means any day other than a Saturday, Sunday, or legal holiday, as defined in

4   Bankruptcy Rule 9006(a).

5       **"Car Wash Notes"** means those certain promissory notes described in the *Motion Pursuant*

6   *to Bankruptcy Rule 9019 for Approval of Settlement and Compromise Regarding Certain*

7   *Promissory Notes* [Docket No. 400] that were executed Prepetition by the Car Wash Borrowers in

8   favor of Blanchard Enterprises and Ranco Realty Group.

9       **"Car Wash Borrowers"** means Green-N-Clean Express Car Wash, Inc., GNC Express

10   Partners, LP, and Edwards Express Partners, LP, which are liable to the Estate under the Modified

11   Car Wash Notes.

12       **"Car Wash Modification Order"** means the Bankruptcy Court order granting the *Motion*

13   *Pursuant to Bankruptcy Rule 9019 for Approval of Settlement and Compromise Regarding Certain*

14   *Promissory Notes* [Docket No. 400].

15       **"Cash"** means legal tender of the United States of America and Cash equivalents, including,

16   but not limited to, bank deposits, checks, money market funds or other similar items.

17       **"Causes of Action"** means any and all claims, demands, rights, actions, causes of action and

18   suits of the Debtor's Estate, of any kind or character whatsoever, known or unknown, suspected or

19   unsuspected, matured or unmatured, whether arising prior to, on or after the Petition Date, in

20   contract or in tort, at law or in equity or under any other theory of law, of the Debtor's Estate,

21   including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts

22   or for breaches of duties imposed by law; (2) the right to object to claims or interests; (3) claims

23   pursuant to section 362 of the Bankruptcy Code; (4) such claims and defenses as fraud, negligence,

24   breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all

25   claims or rights under Bankruptcy Code sections 542, 543, 544, 547, 548, 549, 550, 551, 552, and

26   553, all fraudulent-conveyance and fraudulent-transfer laws, all non-bankruptcy laws vesting in

27   creditors' rights to avoid, rescind, or recover on account of transfers, all preference laws, the

28   Uniform Fraudulent Transfer Act (as it may have been codified in any particular jurisdiction), the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Uniform Fraudulent Conveyance Act (as it may have been codified in any particular jurisdiction), and all similar laws and statutes; (6) claims for tax refunds; and (7) any other claims which may be asserted against Affiliates, Insiders and/or any other third parties.

"**Chapter 11 Case**" means the case under chapter 11 of the Bankruptcy Code of the Debtor Randall William Blanchard pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division, and bearing case number 8:14-bk-14105-SC.

"**Claim**" means a claim as that term is defined in Bankruptcy Code section 101(5).

"**Claims Bar Date**" means October 30, 2014, which is the last date for filing Claims arising prior to the Petition Date pursuant to the Court's order, and such other deadlines for filing Claims against the Debtor as of a certain specified period pursuant to orders of the Court.

"**Class**" means a group of Claims as classified in Article V.

"**Committee**" or "**Creditors' Committee**" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Case.

"**Committee Authority Stipulation**" means the *Stipulation for Order Authorizing the Official Committee of Unsecured Creditors to Investigate, Initiate, Prosecute, Defend, and Settle All Actions and Claims of the Estate Relating to Debtor's Affiliate and/or Insider Entities Relating to Certain Actions Against IFA*, filed by the Committee in the Chapter 11 Case on December 4, 2014 [Docket No. 156].

"**Confirmation**" means the entry of an Order by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"**Confirmation Date**" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

"**Confirmation Hearing**" means the hearing regarding Plan confirmation.

"**Confirmation Hearing Date**" means the first date on which the Bankruptcy Court holds the Confirmation Hearing.

"**Confirmation Order**" means the Bankruptcy Court order confirming this Plan under Bankruptcy Code section 1129.

1    "**Convenience Claim**" means any Claim against the Debtor that would otherwise be a

2  General Unsecured Claim but for the fact that the Claim is Allowed in an amount that is greater than

3  $0 and less than or equal to $50,000 or for which the Creditor elects (pursuant to the appropriate

4  election on the Ballot for Class 4 or other written instrument submitted and satisfactory to the Plan

5  Proponent) to reduce the Allowed amount of its Claim to $50,000; *provided, however*, that a Claim

6  may not be sub-divided into multiple Claims of $50,000 or less for purposes of receiving treatment

7  as a Convenience Claim.

8      "**Creditor**" has the meaning ascribed to the term in section 101(10) of the Bankruptcy Code.

9      "**Debtor**" means Randall William Blanchard.

10     "**Debtor Party Releases**" shall have the meaning set forth in <u>Section IX.E</u> of the Plan.

11     "**Debtor Releasees**" shall have the meaning set forth in <u>Section IX.E</u> of the Plan.

12     "**Disallowed Claim**" means (i) a Claim, or any portion thereof, that has been disallowed by a

13  Final Order; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or

14  unliquidated and as to which no proof of Claim has been timely filed or deemed timely filed with the

15  Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law; or (iii) a

16  Claim that has not been listed in the Schedules and as to which no proof of Claim has been timely

17  filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final

18  Order, or other applicable law.

19     "**Disclosure Statement**" means the Disclosure Statement describing the Plan, as it may be

20  amended from time to time, together with any supplemental disclosure(s) relating to the Plan

21  approved by the Bankruptcy Court.

22     "**Disclosure Statement Order**" means the Orders entered by the Bankruptcy Court

23  approving the Disclosure Statement, including any supplemental disclosure(s) relating to the Plan.

24     "**Disputed Claim**" means a Claim: (a) as to which a proof of Claim is filed or is deemed

25  filed under Bankruptcy Rule 3003(b)(1); and (b) as to which an objection: (1) has been timely filed;

26  and (2) has neither been overruled nor been denied by a Final Order and has not been withdrawn.

27     "**Disputed Claim Reserve**" means each separate reserve in the Plan Reserves for payment of

28  Disputed Administrative Claims, Disputed Professional Fee Claims, Disputed Priority Tax Claims,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Disputed Other Priority Claims, Disputed Secured Claims, Disputed Convenience Claims and Disputed General Unsecured Claims until such Claim becomes an Allowed Claim or Disallowed Claim.

**"Distribution"** means any transfer of Cash or other property or instruments to either a Holder of an Administrative Claim or a Holder of an Allowed Claim under the Plan.

**"Effective Date"** means the date selected by the Plan Proponent, after reasonable consultation with the Debtor and the Committee, and designated in a notice to be filed with the Bankruptcy Court, which is a Business Day after the Confirmation Date on which all conditions specified in <u>Section X.A</u> of the Plan have been satisfied or waived by the Plan Proponent.

**"Effective Date Cash"** shall mean all Cash belonging to the Estate held by the Trustee on the Effective Date.

**"Estate"** means the bankruptcy estate created in the Chapter 11 Case under Bankruptcy Code section 541.

**"Excluded Assets"** means the following:  (i) the Primary Residence, subject to all existing liens and encumbrances; (ii) jewelry as disclosed in the Schedules with an insurable value that the Debtor represents and warrants does not exceed $170,000.00; (iii) household furnishings and other personal effects, as disclosed in the Schedules, which the Debtor represents and warrants do not have a material value on a liquidation basis; (iv) one 2010 Mercedes Benz CL 500; (v) "Section 529(a)" college savings program accounts,[1] which had an aggregate balance of approximately $ 339,000.00 as of the Petition Date; and (vi) the Debtor's fifty percent (50%) of the ownership interest in Seasmoke Partners and fifty percent (50%) interest in the Seasmoke Distributions, both subject to the pledge to the Plan Administrator and other terms and conditions discussed in <u>Section VII.A.2</u> of the Plan.

**"Event of Default"** means any of the following: (i) the failure by the Debtor to make any payment to the Plan Administrator within five (5) business days of the due date of such payment under the Plan or the failure to properly and fully account and turn over to the Plan Administrator

---

[1] The Debtor opened these accounts prior to the Petition Date pursuant to 26 U.S.C. § 529, and they are "exempt assets" pursuant to section 522 of the Bankruptcy Code.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

any and all payments to be made by him or Seasmoke to the Plan Administrator under the Plan within five (5) business days of receipt of such funds by the Debtor or Seasmoke; (ii) the failure by the Debtor to satisfy any other obligation or covenant of the Debtor under the Plan after notice of said default and after the passage of ten (10) business days without said default having been cured; and (iii) any material misrepresentation in the Blanchard Declaration.  The Plan Administrator shall copy the Oversight Committee on any notices of Events of Default delivered to the Debtor.

"**Exculpated Conduct**" has the meaning set forth in <u>Section IX.A.1</u> of this Plan.

"**Final Order**" means an order or judgment of a court of competent jurisdiction entered on such court's official docket: (a) that has not been reversed, rescinded, stayed, modified, or amended; (b) that is in full force and effect; and (c) with respect to which: (1) the time to appeal or to seek review, remand, rehearing, or a *writ of certiorari* has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or *writ of certiorari* is pending; or (2) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a *writ of certiorari* was sought.

"**FTB**" means the California Franchise Tax Board.

"**General Unsecured Claim**" means a Claim that is not an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, a Secured Claim, or a Convenience Claim against the Estate. For the avoidance of doubt, a General Unsecured Claim is classified as a Class 4 Claim.

"**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

"**Heirs Trust**" means the Randy and Marynn Blanchard Heirs' Trust dated May 3, 2010.

"**Holder**" means the holder of a Claim against the Debtor.

"**Indemnified Parties**" has the meaning set forth in <u>Section VII.F</u> of this Plan.

"**Insider**" means an insider as that term is defined in Bankruptcy Code section 101(31).

"**Irrevocable Trust**" means the Randy and Marynn Blanchard Irrevocable Trust dated October 8, 2010.

"**IRS**" means the Internal Revenue Service.

"**Letter of Authority**" means that certain letter dated March 30, 2011, from William Randall Blanchard, the Trust Protector of the Irrevocable Trust, to the Trustee of the Irrevocable

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Trust amending the Irrevocable Trust to instruct the Trustee of the Irrevocable Trust to "distribute all net income on a regular basis to Grantor of the [Irrevocable] Trust, Randy and Marynn Blanchard." A copy of the Letter of Authority is attached as <u>Exhibit 2</u> to the Committee Authority Stipulation.

**"Lien"** means any charge against or interest in property to secure payment or performance of a Claim, debt or obligation.

**"Living Expense Loan"** has the meaning set forth in <u>Section X, C</u> below.

**"Local Rules"** means the Local Bankruptcy Rules for the United States Bankruptcy Court for the Central District of California, as now in effect or hereafter amended and applicable to the Chapter 11 Case.

**"Mercedes CLS 550"** means that certain 2013 Mercedes-Benz CLS Class Sedan 4D CLS 550, with VIN WDDLJDB5DA071537, which the Debtor leased from Mercedes-Benz of Laguna Niguel pursuant to that certain Motor Vehicle Lease Agreement dated November 20, 2012.

**"Meryton Management"** means Meryton Management, Inc., an entity which is owned and controlled by the Debtor.

**"Meryton Management Accounts"** means the accounts in the name of, or for the benefit of, Meryton Management that are held at Bank of America and include, but are not limited to, the account identified by the following account number: Account x2142.

**"Modified Car Wash Notes"** means the Car Wash Notes, as modified pursuant to the Car Wash Modification Order.

**"Other Priority Claim"** means a Claim against the Estate entitled to a priority under Bankruptcy Code section 507(a), excluding Administrative Claims and Priority Tax Claims.

**"Oversight Committee"** means a committee of Persons established pursuant to <u>Article VII.E</u> of this Plan to oversee the Plan Administrator's performance of his or her duties and otherwise serve the functions described in this Plan.

**"Oversight Committee Conference Requirement"** means the requirement of the Plan Administrator to advise, confer and consult with the Oversight Committee on the matter specified in the applicable Plan provision reasonably prior to the subject action of the Plan Administrator, and if the Oversight Committee objects to the particular action to be taken, the Oversight Committee shall

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

have a reasonable opportunity (no less than two business days) to seek relief from the Bankruptcy Court.

"**Paseo Goleta Property**" means that certain real property owned by the Debtor located at 31572 Paseo Goleta, Temecula, California 92592.

"**Person**" has the meaning set forth in section 101(41) of the Bankruptcy Code.

"**Petition Date**" means July 1, 2014, which is the date that the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

"**Plan**" means this *Plan of Reorganization Proposed by Chapter 11 Trustee for Debtor Randall William Blanchard*, as it may be amended or modified from time to time.

"**Plan Administrator**" means Richard M. Pachulski, who presently serves as the Trustee in the Chapter 11 Case, or such successor thereto approved by the Bankruptcy Court as the sole representative of the Estate on and after the Effective Date for purposes of administering the Plan and representing the Estate in all proceedings (including, without limitation, all proceedings before the Bankruptcy Court) on and after the Effective Date in accordance with the terms of the Plan.

"**Plan Consummation Certification**" has the meaning set forth in Section IX.F of this Plan.

"**Plan Expenses**" means the expenses incurred by the Plan Administrator following the Effective Date (including fees and costs payable to the Plan Administrator pursuant to Section VII.D.4 of the Plan and the fees and costs of attorneys, advisors, other professionals and agents) for the purpose of (i) prosecuting or otherwise attempting to collect or realize upon the Causes of Action; (ii) liquidating, selling, abandoning or collecting upon any of the Assets or otherwise incurred following the Effective Date in connection with generating Available Cash; (iii) resolving Disputed Claims and effectuating Distributions to Holders of Allowed Claims under the Plan; or (iv) otherwise implementing the Plan and the closing the Chapter 11 Case, including, but not limited to paying post-Effective Date taxes and wind-down expenses (such as records maintenance).

"**Plan Proponent**" means Richard M. Pachulski, in his capacity as the Trustee, in relation to the Plan proposed for the Debtor.

"**Plan Reserves**" means all reserves of Assets to be established by the Plan Administrator on the Effective Date (or as soon as reasonably practicable thereafter), after consultation with the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Oversight Committee, reasonable and sufficient to satisfy amounts that include, but are not limited to the following: (a) all unpaid Allowed Claims against the Debtor; (b) all Claims that may be Allowed after the Effective Date; (c) valid tax liabilities against the Estate arising from the sale of Assets, including any capital gains taxes; (d) any and all Plan Expenses including, without limitation, the fees and expenses of the Plan Administrator and his or her attorneys, advisors and other agents, the fees and expenses of counsel to the Oversight Committee, the quarterly fees payable to the Office of the United States Trustee, and other expenses relating to the implementation of the Plan expected to arise after the Effective Date; and (e) the cumulative total amount of each Disputed Claim Reserve. The amount of the Plan Reserve shall be determined by the Plan Administrator in its discretion, or in such amount as ordered by the Bankruptcy Court after notice and a hearing.  The Plan Reserves shall be disclosed in a notice to be filed with the Court by the Plan Proponent prior to the Effective Date, and such amount(s) may be reduced, increased and/or replenished after the Effective Date by the Plan Administrator in its discretion.  After the Effective Date, the Plan Administrator shall provide the Oversight Committee notice of and the basis for any changes in the amount of the Plan Reserves, and the Oversight Committee may present any objections to the amount of the Plan Reserves to the Bankruptcy Court.

"**Plan/Case Participants**" has the meaning set forth in <u>Section IX.A.1</u> of this Plan.

"**Post-Confirmation Service List**" means the Plan Proponent and his bankruptcy counsel, the Debtor and his bankruptcy counsel, the Oversight Committee and its counsel, the Office of the United States Trustee, Holders of Allowed and unpaid Administrative Claims, Priority Tax Claims, and Other Priority Claims, and any other party in interest in the Chapter 11 Case that specifically requests in writing that the Plan Administrator add such party's name to the list.

"**Postpetition**" means the time after the Petition Date.

"**Primary Residence**" means the Debtor's principal residence located at 7 Meryton in Irvine, California 92603-3464.

"**Priority Tax Claim**" means a Claim against the Estate entitled to priority against said Estate under Bankruptcy Code section 507(a)(8).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**"Pro Rata"** means proportionately so that the ratio of (a) the amount of consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is the same as the ratio of (x) the amount of consideration available for distribution on account of all Allowed Claims in the Class in which that Allowed Claim is included (or multiple Classes if expressly provided in the Plan) to (y) the amount of all Allowed Claims in that Class (or multiple Classes if expressly provided in the Plan).

**"Professional Fee Claim"** means a Claim under Bankruptcy Code sections 326, 327, 328, 330, 331, 503(b), 1103, or 1104 for compensation for services rendered or expenses incurred by any of the Professionals prior to the Effective Date.

**"Professionals"** means the professionals (including, without limitation, attorneys, accountants, and other advisors and agents) employed by the Trustee, the Creditors' Committee, or the Debtor, but in the case of the Debtor, only those professionals authorized to be employed prior to the appointment of the Trustee on January 12, 2015 pursuant to the *Order Approving the United States Trustee's Application for the Appointment of Chapter 11 Trustee* [Docket No. 262], at the expense of the Estate pursuant to sections 327, 328, 363, 1103, or 1104 of the Bankruptcy Code.

**"Rejection Damage Claim"** means a Claim for any obligations or damages arising under an unexpired real-property or personal-property lease or executory contract that the Estate reject under Bankruptcy Code section 365 or pursuant to the terms of this Plan.

**"Related Parties"** means with respect to any person or entity, all of such person's or entity's direct or indirect subsidiaries, partnerships, management companies, current or former corporations or trusts, staff, shareholders, legal representatives, attorneys, accountants, financial advisors, insurers, heirs, executors, administrators, partners, guarantors, investors, trustees, parents, successors, assigns, managers, affiliates, employees, members, contractors, consultants, agents, officers and directors, all and each in their respective personal and corporate capacities; provided, however, for the avoidance of doubt, the Debtor is not a Related Party of his Estate; a Related Party of the Debtor is not, by virtue of being a Related Party of the Debtor, a Related Party of the Estate.

**"Schedules"** means the respective Schedules of Assets and Liabilities and Statement of Financial Affairs of the Debtor that have been or may be filed pursuant to section 521 of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, including any supplements or amendments thereto through the Confirmation Date.

"**Seasmoke Advance**" has the meaning set forth in <u>Section X, C</u> below.

"**Seasmoke Distributions**" shall have the meaning set forth in <u>Section VII.A.2</u>.

"**Seasmoke Notes**" means those certain notes listed in <u>Exhibit A</u> attached hereto that were issued by the Debtor, as the lender, to Seasmoke Partners, as the borrower.

"**Seasmoke Partners**" means Seasmoke Partners, LLC, whose Manager is Meryton Management, and which is owned by certain of the Debtor's offspring.

"**Seasmoke Projects**" means the following real estate projects in which Seasmoke Partners owns indirect ownership interests:  (a) Loynes Beach Partners, LLC, which owns approximately 9 acres of land located at 400 Studebaker Road in Long Beach, California; (b) Palm Canyon 65, LLC, which owns approximately 12.65 acres of land in downtown Palm Springs, California; (c) Sand Dollar Cartwright, LLC, which owns approximately 1.7 acres of land in Irvine, California; (d) Sand Dollar Gillette, LLC, which owns approximately 2.4 acres of land in Irvine, California; (e) Sand Dollar Barranca 1, LLC; (f) Sand Dollar Barranca 2, LLC, which together with Dollar Barranca 1, LLC, they own approximately 6.3 acres of land in Irvine, California; (g) Vico, LLC, which holds a long term lease of approximately 175 acres of land owned by the City of Los Angeles that is currently used as the Victoria Golf Course in Carson, California; and (h) Black River Energy, LLC, which holds a participation interest in the sale or transfer of approximately 172 acres of wetlands in the City of Long Beach.

"**Seasmoke Trust Account**" means a bank account established on the Effective Date and controlled by the Plan Administrator into which shall be deposited: (a) all of the funds of Seasmoke Partners as of the Effective Date; and (b) all distributions to, and other receipts by Seasmoke Partners occurring after the Effective Date and prior to the filing of the Plan Consummation Certification, and from which the Plan Administrator shall make all payments and distributions on behalf of Seasmoke Partners until the Plan Consummation Certification shall have been filed by the Plan Administrator.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**"Secured Claim"** means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is secured by a lien against property in which the Estate has an interest or that is subject to setoff under Bankruptcy Code section 553.  A Claim is a Secured Claim only to the extent of the value of the claimholder's interest in the collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable, and as determined under Bankruptcy Code section 506(a).

**"Trust Accounts"** means the accounts in the name of, or for the benefit of, either the Heirs Trust or the Irrevocable Trust that are held at Bank of America and include, but are not limited to, the account identified by the following account number: Account x4003.

**"Trustee"** means Richard M. Pachulski, the duly appointed chapter 11 trustee in the Chapter 11 Case of Blanchard.

"**U.S. Trustee**" means Peter C. Anderson, the United States Trustee for Region 16, Central District of California, and/or any other Person acting on behalf of the Office of the United States Trustee.

"**Voting Deadline**" means the deadline established by Final Order of the Bankruptcy Court for receipt of Ballots voting to accept or reject the Plan.

**"Wells Fargo"** means Wells Fargo Bank, N.A.

## II.

## RULES OF INTERPRETATION

1.      The rules of construction in Bankruptcy Code section 102 apply to this Plan to the extent not inconsistent with any other provision in this Article II.

2.      Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) applies when computing any time period under the Plan.

3.      A term that is used in this Plan and that is not defined in this Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

4.      The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules, or the Disclosure Statement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5.      Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

6.      Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.  No material change to the form or terms may be made after the Confirmation Date without the consent of any party materially affected.

7.      Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

8.      Unless otherwise indicated, the phrase "under the Plan" and the words "herein" and "hereto" and similar words or phrases refer to this Plan in its entirety rather than to only a particular portion of the Plan.

9.      Unless otherwise specified, all references to articles, sections, clauses or exhibits are references to this Plan's articles, sections, clauses or exhibits.

10.      Section captions and headings are used only as convenient references and do not affect the Plan's meaning.

## III.

## PLAN OBJECTIVES

The Plan provides for the establishment and appointment on the Effective Date, of a Plan Administrator for the purposes of, among other things, (a) administering, collecting, liquidating and monetizing the Assets of the Estate, including, as applicable, the sale of any Assets of the Estate (to the extent they are not sold prior to the Effective Date) and any Assets conveyed or reconveyed to the Estate pursuant to the Plan; (b) administering and using monies remitted to the Trustee or the Plan Administrator to pay creditors under the Plan; (c) the pursuit or prosecution of, or other participation in respect to, as applicable, any remaining Causes of Action; (d) representing the Estate in any proceedings, including proceedings before the Bankruptcy Court; (e) objecting to, settling or otherwise resolving all Claims; (f) making all Distributions provided for under the Plan (including Distributions funded by the Assets that may be remitted to the Trustee or Plan Administrator); and (g) taking all other actions consistent with the Plan.  The Plan Administrator shall consult with the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Oversight Committee as to certain matters as set forth herein.  On the Effective Date, the Estate's

2    Assets shall remain vested in the Estate.

3         The Plan contemplates the liquidation of all Assets other than the Excluded Assets and the

4    distribution of the net proceeds thereof to Holders of Allowed Claims in order of their priority as

5    prescribed by this Plan in satisfaction of the Debtor's obligations; provided, however, Holders of

6    Allowed Convenience Claims shall receive payment under the Plan ahead of the Holders of other

7    Allowed General Unsecured Claims.

8         Pending the occurrence of the Effective Date, the Trustee shall remain as the representative

9    of the Estate and shall continue to be authorized to implement actions on behalf of the Estate,

10   including, without limitation, collecting and selling or otherwise liquidating the Assets.

11   **IV.**
   **METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS;**
12   **GENERAL PROVISIONS**

13        **A.    General Rules of Classification**

14        The Plan divides Creditors into Classes based on their legal rights and interests, and provides

15   for the satisfaction of Claims and, if applicable, Interests from the remaining Assets in the Estate.

16   This section classifies Claims, except for Administrative Claims, Priority Tax Claims, and

17   Professional Fee Claims, which are not classified, for all purposes, including voting, confirmation,

18   and distributions under the Plan.  A Claim is classified in a particular Class only to the extent that the

19   Claim falls within the Class description.

20        **B.    Holder of Claims Entitled to Vote**

21        Each holder of an Allowed Claim and each holder of a Claim that has been temporarily

22   allowed for voting purposes by order under Bankruptcy Rule 3018(a), which Claim is in an impaired

23   Class of Claims, shall be entitled to vote separately to accept or reject the Plan as provided by the

24   Solicitation Procedures Order.  Any unimpaired Class of Claims shall be deemed to have accepted

25   the Plan.

26        Pursuant to the Bankruptcy Code, only Classes of Claims that are "impaired" (as defined in

27   section 1124 of the Bankruptcy Code) under the Plan are entitled to vote to accept or reject the Plan.

28   A Class is impaired if the legal, equitable, or contractual rights to which the Claims of that Class

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

entitled the Holders of such Claims are modified, other than by curing defaults and reinstating the debt.  Classes of Claims that are not impaired are not entitled to vote on the Plan and are conclusively presumed to have accepted the Plan.  In addition, Classes of Claims that receive no distributions under the Plan are not entitled to vote on the Plan and are deemed to have rejected the Plan.

### C.  Administrative Claims, Priority Tax Claims, and Professional Fee Claims

Administrative Claims, Priority Tax Claims, and Professional Fee Claims have not been classified and are excluded from the Classes set forth in Article V of the Plan in accordance with section 1123(a)(1) of the Bankruptcy Code.

### V.

### TREATMENT OF CLAIMS AND INTERESTS

The following tables summarize the classification and treatment of the Classes of Claims under this Plan:

| Class | Description | Impaired/Unimpaired | Voting Status |
|---|---|---|---|
| Class 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| Class 2 | Secured Claims: | | |
| Class 2A | Bank of America | Unimpaired | Deemed to Accept |
| Class 2B | Wells Fargo Primary Residence Claim | Unimpaired | Deemed to Accept |
| Class 2C | Wells Fargo Paseo Goleta Claim | Unimpaired | Deemed to Accept |
| Class 3 | Convenience Claims | Impaired | Voting |
| Class 4 | Unsecured Claims | Impaired | Voting |

The treatment in this Plan is on account of the legal, contractual, and equitable rights that each holder of an Allowed Claim or Interest may have in or against the Debtor and his respective property.  This treatment supersedes and replaces any agreements or rights those holders have in or against the Debtor and his respective property.  All Distributions under the Plan will be tendered to the entity holding the Allowed Claim.  **EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**A.**     <u>Allowance of Unclassified Claims (Administrative Claims, Priority Tax Claims, and Professional Fee Claims)</u>

Entities that hold Administrative Claims and that do not timely file and serve a proof of Administrative Claim or a motion or application seeking payment in accordance with this <u>Article V</u> will be forever barred from asserting those Administrative Claims against the Debtor or the Estate.

        1.     <u>Allowed Administrative Claims</u>

To be eligible to receive distributions under the Plan on account of an Administrative Claim (other than a Professional Fee Claim and statutory fees due to the Office of the United States Trustee, or as otherwise provided under Bankruptcy Code section 503(b)(1)(D)) that is not otherwise allowed by the Plan, an Administrative Claim must be filed with the Bankruptcy Court so as to be received on or before the Administrative Claim Bar Date, or such other date as may be agreed to by the Plan Administrator. Any Holder of an Administrative Claim that does not assert such Claim in accordance with this <u>Article V</u> or other Order of the Bankruptcy Court shall have its Administrative Claim be deemed Disallowed under this Plan and be forever barred from asserting such Claim against the Debtor, the Estate, or any of their assets or property. Any such Claim shall be Disallowed and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

        2.     <u>Allowed Professional Fee Claims</u>

A Professional Fee Claim for the period from the Petition Date through the Effective Date for services rendered on behalf of the Debtor's Estate will be allowed only if (a) the Professional requesting compensation files and serves a properly noticed fee application by no later than forty-five (45) days after the Effective Date; and (b) the Bankruptcy Court allows the Claim pursuant to a Final Order. For the purposes of allowing the Professional Fee Claim of the Trustee through the Effective Date under Bankruptcy Code §§ 326(a) and 330, the transfer on the Effective Date of the Effective Date Cash by the Trustee to the Plan Administrator shall be treated as "monies disbursed or turned over in the case by the trustee to parties in interest," as that term is used in Bankruptcy Code § 326(a). Notwithstanding the foregoing, the Plan Administrator shall not be entitled to the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

payment of a fee pursuant to Section VII.D.4 of the Plan when the Effective Date Cash is

subsequently distributed by the Plan Administrator pursuant to the Plan.

3.    **Allowed Priority Tax Claims**

To be eligible to receive distributions under the Plan on account of a Priority Tax Claim, the

Priority Tax Claim must be a scheduled Claim or a proof of Claim must be filed with the Bankruptcy

Court so as to be received on or before the Claims Bar Date, or such other date as may be agreed to

by the Plan Administrator.  Any holder of a Priority Tax Claim that does not assert such Claim in

accordance with Article V of the Plan shall have its Claim be deemed Disallowed under this Plan

and be forever barred from asserting such Claim against the Debtor and Estate or any of their assets

or property.  Any such Claim shall be Disallowed and the holder thereof shall be enjoined from

commencing or continuing any action, employment of process or act to collect, offset, recoup or

recover such Claim.

B.    **Treatment of Unclassified Claims
(Administrative and Priority Tax Claims)**

1.    **Administrative Claims including Allowed Professional Fee Claims**

Except to the extent the Holder of an Allowed Administrative Claim agrees otherwise, each

Holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim the full

amount thereof, without interest, in Cash, as soon as practicable after funds become available

(a) after the later of (i) the Effective Date or (ii) ten (10) Business Days after the date on which such

Claim becomes an Allowed Administrative Claim; or (b) if the Claim represents an obligation

incurred in the ordinary course of business or under a particular agreement with the Debtor, payment

in the ordinary course in accordance with the terms of the particular transaction and/or applicable

agreement; provided, however, interest shall be paid on the unpaid portion of any Allowed

Administrative Tax Claim at the statutory rate under applicable nonbankruptcy law in accordance

with Bankruptcy Code section 511 or at a rate to be agreed to by the Plan Administrator (after

reasonable consultation with the Oversight Committee) and the appropriate Governmental Unit, or,

if the applicable parties are unable to agree, as determined by the Bankruptcy Court.  The Plan

Administrator shall maintain Plan Reserves to be used to fund the payment of Administrative Claims

1  that may be Allowed after the Effective Date pursuant to the Plan, and such Administrative Claims

2  shall be paid in full as and when they become Allowed Claims and shall be paid prior to any unpaid

3  Allowed Claims that are junior in priority.

4       Notwithstanding any other provision herein, Allowed Professional Fee Claims shall be paid

5  or reserved for in full prior to any payment by the Plan Administrator and the Estate of any Plan

6  Expenses on account of fees/expenses of professionals and agents of the Plan Administrator and the

7  Oversight Committee.

8          2.    **Priority Tax Claims**

9       Each Holder of an Allowed Priority Tax Claim will be paid in respect of such Allowed

10  Priority Tax Claim either (a) the full amount thereof, without postpetition interest or penalty, in

11  Cash, as soon as practicable after funds become available (a) after the later of (i) the Effective Date

12  or (ii) ten (10) Business Days after the date on which such Claim becomes an Allowed Priority Tax

13  Claim (provided that if such payment is made after the Effective Date, post-Effective-Date interest

14  shall be paid at the applicable statutory rate in accordance with Bankruptcy Code section 511); or

15  (b) such lesser amount as to which the Holder of an Allowed Priority Tax Claim and the Plan

16  Administrator (after reasonable consultation with the Oversight Committee) might otherwise agree.

17       The Plan Administrator shall establish and maintain Plan Reserves to be used to fund the

18  payment of Priority Tax Claims that may be Allowed after the Effective Date pursuant to the Plan,

19  and such Priority Tax Claims shall be paid in full as and when they become Allowed Claims and

20  shall be paid prior to any unpaid Allowed Claims that are junior in priority.

21       Notwithstanding any other provision herein, other than (i) Allowed Priority Tax Claims of

22  the IRS and FTB allowed prior to the Effective Date and (ii) any Allowed Administrative Claims of

23  the IRS and FTB, any and all other Allowed Claims of the IRS and FTB against the Estate shall be

24  paid solely from the Plan Reserves, and in the event that there may be insufficient Cash in the Plan

25  Reserves, the IRS and/or the FTB, as applicable, shall have no recourse against any other Assets of

26  the Estate.  Notwithstanding any other provision herein, no Distributions shall be made to Creditors

27  on account of Claims junior in priority to the Claims of the IRS and FTB until either (i) the Plan

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Reserves have been funded in full or (ii) all of the asserted Claims of the IRS and FTB have been

Allowed, Disallowed or otherwise resolved and all such Allowed Claims have been paid in full.

**C.**     **Classification and Treatment of All Other Priority Claims (Class 1)**

**Classification:**  Class 1 consists of Other Priority Claims against the Debtor.

**Treatment:**  Holders of Claims in this Class are unimpaired under the Plan and deemed to

accept the Plan.

Each Holder of an Allowed Class 1 Claim shall receive (a) payment in full in Cash as soon as

practicable after funds become available after the later of (i) the Effective Date, or (ii) ten (10)

Business Days after the date on which such Claim becomes an Allowed Claim; or (b) if applicable,

payment in the ordinary course in accordance with the terms of the particular transaction and/or

applicable agreements; or (c) as otherwise agreed by the Holder of such Allowed Claim.  The Plan

Administrator shall maintain Plan Reserves to be used to fund the payment of Other Priority Claims

that may be Allowed after the Effective Date pursuant to the Plan.

**D.**     **Classification and Treatment of Secured Claims (Class 2)**

**Classification:**  Class 2 consists of Secured Claims against the Debtor.  To the extent there

are any Claims in this Class, each such Claim shall be deemed to be a separate subclass (*e.g.*, Class

2A, Class 2B, Class 2C, *etc.*).

1.     **Class 2A**

**Classification:**  Class 2A consists of the Allowed Secured Claim of Bank of America against

the Debtor arising out of the Debtor's guarantee of the Bank of America Loan.

**Treatment:**  Holders of Claims in Class 2A are unimpaired under the Plan and deemed to

accept the Plan.

Except as otherwise agreed by the Holder of an Allowed Class 2A Claim and as provided for

in the *Order Approving Stipulation Resolving Bank of America, N.A.'s Motion for Relief from the*

*Automatic Stay* [Docket No. 338], on the earlier of (i) August 1, 2015, or (ii) the Effective Date, the

Holder of such Allowed Claim shall receive, in full and final satisfaction of the Creditor's Claim,

payment in full from the funds in the Blanchard Enterprises Accounts.

2.    **Class 2B**

**Classification:**  Class 2B consists of the Allowed Secured Claim of Wells Fargo against the Debtor arising out of Wells Fargo's mortgage and deed of trust related to the Primary Residence.

**Treatment:**  Holders of Claims in Class 2B are unimpaired under the Plan and deemed to accept the Plan.

Except as otherwise agreed by the Holder of an Allowed Class 2B Claim, on the Effective Date, the Plan Administrator shall release any and all right, claim and interest it has in and to the Primary Residence, which shall be abandoned back to the Debtor, subject to all existing liens and encumbrances, including but not limited to the Class 2B Claims; provided, however, that Wells Fargo shall have recourse only against the Debtor and his wife, Marynn, and shall not have any recourse claims against the Estate.

3.    **Class 2C**

**Classification:**  Class 2C consists of the Allowed Secured Claim of Wells Fargo against the Debtor arising out of Wells Fargo's mortgage and deed of trust related to the Paseo Goleta Property.

**Treatment:**  Holders of Claims in Class 2C are unimpaired under the Plan and deemed to accept the Plan.

Except as otherwise agreed by the Holder of an Allowed Class 2C Claim, within thirty (30) days following the Effective Date, the Plan Administrator shall transfer, in full and final satisfaction of the Creditor's Class 2C Claim, the Paseo Goleta Property to Wells Fargo or its designee.

**E.    Classification and Treatment of Convenience Claims (Class 3)**

**Classification:**  Class 3 consists of all Convenience Claims against the Debtor.

**Treatment:**  Holders of Claims in this Class are impaired under the Plan and entitled to vote on the Plan.

Each Holder of an Allowed Convenience Claim shall receive, as soon as practicable after funds become available, after the later of (i) the Effective Date, and (ii) ten (10) Business Days after the date on which such Claim becomes an Allowed Claim, in full and final satisfaction of the Creditor's Claim, Cash equal to 50% of the Allowed amount of such Claim, as calculated without interest from the Petition Date, and no such Holder will be entitled to any future distribution from

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Estate.  If and to the extent that a Creditor's Claim is above $50,000 and the Creditor desires to

reduce the Allowed amount of its Claim to $50,000 and have its Claim treated as a Convenience

Claim, said Creditor must make the appropriate election on the Class 3 Ballot or other written

instrument submitted and satisfactory to the Plan Proponent.

### F.    Classification and Treatment of Unsecured Claims (Class 4)

**Classification:**  Class 4 consists of all Unsecured Claims against the Debtor, which excludes

all Convenience Claims.

**Treatment:**  Holders of Claims in this Class are impaired under the Plan and entitled to vote

on the Plan.

Except as otherwise agreed by the Holder of an Allowed Class 4 Claim, the Holder of such

Allowed Claim shall receive, in full and final satisfaction of the Creditor's Claim, payment on a Pro

Rata basis (based on the aggregate principal amount of all Allowed Class 4 Claims) out of Available

Cash, after the Effective Date and as often as reasonable in the Plan Administrator's discretion,

subject to the Oversight Committee Conference Requirement, after the payment of all Allowed

Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed

Secured Claims and Allowed Convenience Claims, and after the establishment or maintenance of

appropriate Plan Reserves; provided, however, in the event that the Estate has more than $2,000,000

in Available Cash after the payment of all Allowed Administrative Claims, Allowed Priority Tax

Claims, Allowed Other Priority Claims, Allowed Secured Claims, and Allowed Convenience Claims

and the establishment/maintenance of all of the requisite Plan Reserves under the Plan, the Plan

Administrator shall make as soon as practicable Pro Rata distributions out of such Available Cash to

Holders of Allowed Class 4 Claims.

Further, to the extent that the Holders of Unsecured Claims are entitled to receive

postpetition interest, any such interest shall be distributed Pro Rata to the Holders of Allowed Class

4 Claims based upon the amount of each such Allowed Claim.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# VI.

## ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

### A.    Impaired Classes to Vote

Each Holder of a Claim in an impaired Class shall be entitled to vote separately to accept or reject the Plan unless such Holder is deemed to accept or reject the Plan.

### B.    Acceptance by Class of Creditors

An impaired Class of Holders of Claims, shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.  A Class of Holders of Claims shall be deemed to accept the Plan in the event that no Holder of a Claim within that Class submits a Ballot by the Voting Deadline.  If and to the extent that the Debtor is entitled to any vote on the Plan, he is deemed to have voted to accept the Plan.

### C.    Cramdown

In the event that any impaired Class of Claims shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Plan Proponent reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code or amend the Plan.

# VII.

## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    Reconveyance and Conveyance of Interests

#### 1.    Blanchard Enterprises

The Plan shall serve as a motion seeking the entry of an order pursuant to sections 544, 548 and 550 of the Bankruptcy Code avoiding the transfer of cash, cash equivalents, securities, investment instruments and any other assets currently under the possession and control of Blanchard Enterprises, the Irrevocable Trust, and the Heirs Trust.  Unless an objection to such avoidance is made in writing by any Creditor affected by the Plan on or before the applicable objection deadline set by the Court, an order (which order may be the Confirmation Order) may be entered by the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Bankruptcy Court avoiding such transfers and reconveying the assets of Blanchard Enterprises, the

2    Irrevocable Trust, and the Heirs Trust to the Estate after satisfaction of the Bank of America Loan.

3         In effectuation of such reconveyance, on the Effective Date, Blanchard Enterprises shall pay

4    the amounts due, if any, under the Bank of America Loan from the Blanchard Enterprises Accounts

5    and then transfer the balances of the Blanchard Enterprises Accounts and the Trust Accounts to the

6    Plan Administrator, who shall administer such assets in accordance with the Plan.

7              2.    **Seasmoke Partners**

8         Effective as of the Petition Date, (i) 100% of the ownership interests in Seasmoke Partners

9    shall be deemed to have been conveyed to the Estate; and (ii) the interests of Meryton Management

10   in and to the profits of Seasmoke Partners shall be canceled.

11        On the Effective Date, (i) Meryton Management shall transfer the balances of the Meryton

12   Management Accounts to the Plan Administrator; (ii) Seasmoke Partners shall transfer all of its

13   funds to the Plan Administrator and such funds shall be held in the Seasmoke Trust Account; (iii)

14   fifty percent (50%) of the ownership interests in Seasmoke Partners shall be held by the Estate in

15   trust for the Debtor, or his nominee, and shall be pledged to the Plan Administrator to secure all of

16   the Debtor's obligations under the Plan; and (iv) 100% of Seasmoke Partners' interests in Black

17   River Energy shall become property of the Estate and the Plan Administrator shall have the sole

18   authority to liquidate or otherwise dispose of 100% of the interests in Black River Energy without

19   consultation with or consent from the Debtor, Seasmoke Partners, or any holders of interests in

20   Black River Energy; provided, however, that if the Debtor or an affiliate of the Debtor holds

21   interests in Black River Energy instead of Seasmoke Partners, then such interests shall become

22   property of the Estate and subject to the sole control of the Plan Administrator.

23        Seasmoke Partners shall pay to the Plan Administrator the full amount of the outstanding

24   balances of the Seasmoke Notes due to the Debtor and Blanchard Enterprises prior to making any

25   distributions to its members.  Once the Plan Administrator has been paid in full on account of the

26   Seasmoke Notes, then the Plan Administrator and the Debtor each shall be entitled to receive fifty

27   percent (50%) of all cash distributions payable to Seasmoke Partners from the Seasmoke Projects,

28   and such distributions shall be paid to the Plan Administrator within fifteen (15) days following the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

receipt of funds by any particular Seasmoke Project (the "Seasmoke Distributions"), provided

however, that such Seasmoke Distributions payable to the Debtor shall be pledged to the Plan

Administrator to secure all of the Debtor's obligations under the Plan.  Further, the Seasmoke

Distributions payable to the Debtor, or his nominee, shall be paid to the Plan Administrator until the

full amount of the Living Expense Loan (i.e., $220,000) and 50% of the Seasmoke Advance have

been repaid in full and the Modified Car Wash Notes, including accrued interest thereon, have been

satisfied.  The Debtor shall have no obligation to repay the remaining 50% balance of the Seasmoke

Advance.

All funds received by Seasmoke Partners after the Effective Date shall be deposited and held

in the Seasmoke Trust Account.  The Plan Administrator shall control the Seasmoke Trust Account

and direct all payments and distributions made on behalf of Seasmoke Partners until the Plan

Consummation Certification has been filed by the Plan Administrator.

The Plan Administrator shall monitor the development of the Seasmoke Projects and all cash

receipts and disbursements in connection with the Seasmoke Projects, including without limitation,

any and all Seasmoke Distributions.  The Debtor and Seasmoke Partners shall provide the Oversight

Committee and the Plan Administrator (i) reports regarding any material changes in the financial,

management or operational status of Seasmoke Partners or the Seasmoke Projects, (ii) upon request,

reports regarding the status of each of the Seasmoke Projects, and (iii) financial and other reporting

provided to partners, lenders and investors in and to the Seasmoke Projects, as and when such

periodic reports are given to said third parties.  Further, the Debtor shall provide the Plan

Administrator with no less than three business days' advance written notice regarding any sales,

loans and/or additional investments pertaining to any of the Seasmoke Projects.  Further, the Debtor

shall not take any actions out of the ordinary course of business on behalf of Seasmoke Partners

without the prior written approval of the Plan Administrator, which approval shall not be

unreasonably withheld.

Upon an Event of Default under the Plan or an event of default by the Car Wash Borrowers

under the Modified Car Wash Notes, the Debtor's share of any Seasmoke Distributions shall be

applied to the satisfaction and cure of such defaults under the Plan or the Modified Car Wash Notes

until such defaults have been satisfied and cured in full.  To the extent that the Debtor's share of the Seasmoke Distributions has been applied to the payment of the Modified Car Wash Notes, upon payment in full of the Modified Car Wash Notes, the Debtor, or his nominee, shall be subrogated to the rights of the Estate under the Modified Car Wash Notes.

### B.    Continuation of the Estate and Vesting of Assets; Winding Up of Affairs

Notwithstanding Bankruptcy Code section 1141(b), on and as of the Effective Date, the Assets, except for the Excluded Assets, shall vest in the Estate and shall remain in existence until all Distributions under the Plan have been made; provided, however, that the Plan Administrator, on behalf of the Estate, after reasonable consultation with the Oversight Committee, may abandon any Asset that the Plan Administrator believes, in good faith, has no meaningful value to the Estate.

On the Effective Date, the Trustee will transfer all of the Effective Date Cash to the Plan Administrator.  Further, on the Effective Date, the Plan Administrator shall be given a copy of (i) all books, records, and files of the Debtor and the Estate that is in the possession, custody or control of the Plan Proponent and/or his agents; and (ii) provide for the retention and storage of such copies of books, records, and files until such time as the Plan Administrator determines, in accordance with the Plan, that retention of same is no longer necessary or required.

As of the Effective Date, all Assets vested in the Estate shall be free and clear of all Claims, Liens, and interests except as otherwise specifically provided in the Plan or in the Confirmation Order.  The Plan Administrator shall make Distributions in accordance with the Plan.

### C.    The Source of Distributions; Reserves

The source of all Distributions and payments under this Plan will be the Assets or the net proceeds thereof of the Estate, including any and all Available Cash, proceeds of the Causes of Action and any other remaining property of the Estate and the Debtor.

The Plan Administrator shall fund the Plan Reserves with proceeds of the Assets of the Estate and maintain Plan Reserves in such amount that is determined by the Plan Administrator in its discretion, or in such amount as ordered by the Bankruptcy Court after notice and a hearing.  At any time prior to the consummation of the Plan, the Plan Administrator may establish a liquidating trust (and serve as trustee) that is consistent with the terms of the Plan and transfer certain Assets to such

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

trust at his discretion for the sole purpose of liquidating remaining Assets and distributing proceeds pursuant to terms of the Plan. Notwithstanding any other provision herein, the Oversight Committee shall have no authority to modify or exert any control in respect to the Plan Reserves. The Plan Proponent shall disclose the amount of the Plan Reserves by a notice to be filed with the Court prior to the Effective Date, and such amount(s) may be reduced, increased and/or replenished after the Effective Date by the Plan Administrator in its discretion.

After all of the Plan Reserves have been funded in full (and replenished if so required pursuant to the Plan), remaining Cash proceeds of the Assets of the Estate shall comprise Available Cash available for distribution to Holders of Allowed Claims pursuant to the Plan (to the extent such Claims are not otherwise satisfied with Cash from the foregoing Plan Reserves), including to Holders of Allowed General Unsecured Claims in accordance with the priorities and other provisions set forth in Article V of the Plan.

### D.  The Plan Administrator

#### 1.  Appointment of the Plan Administrator

The initial Plan Administrator shall be Richard Pachulski. The Plan Administrator may, in his or her discretion, obtain a bond in an amount equal to the reasonable value of the Assets as determined by the Plan Administrator in reasonable consultation with the Oversight Committee.

As of the Effective Date, the Plan Administrator shall be the successor in interest to the Trustee and shall be the sole representative of the Estate, and in such capacity, may exercise rights, power and authority consistent with this Plan, and bankruptcy and non-bankruptcy laws. The Plan Administrator shall serve in such capacity through the date such Plan Administrator resigns, is terminated or otherwise unable to serve; provided, however, that any successor Plan Administrator appointed pursuant to the Plan shall serve in such capacities after the effective date of such person's appointment as Plan Administrator; provided further that, notwithstanding any other provision herein, in the event that Mr. Pachulski determines to resign as the initial Plan Administrator after the Effective Date, such resignation shall not be effective, and Mr. Pachulski shall continue to serve as the Plan Administrator, until a successor Plan Administrator is selected by the U.S. Trustee, or, if applicable, the Court.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2.    **Powers and Authority of Plan Administrator**

The Plan Administrator shall be the exclusive trustee of the Assets of the Estate on and after the Effective Date for purposes of 31 U.S.C. § 3713(b).  The powers and authority of the Plan Administrator shall include, without limitation, other than as provided in the Plan, the power to do the following without further order, approval or notice unless expressly required otherwise under the Plan:

(i)    invest and withdraw funds of the Estate, make distributions, incur obligations for reasonable and necessary expenses in liquidating and converting any remaining Assets of the Estate to Cash, and pay taxes and other obligations owed by the Estate from funds held by the Plan Administrator in accordance with the Plan;

(ii)    perform all of the obligations and agreements of the Plan Administrator provided for in the Plan;

(iii)    protect and enforce the rights to the Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(iv)    perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges;

(v)    determine, satisfy, object to and estimate any and all claims or liabilities created, incurred or assumed by the Estate;

(vi)    pay all expenses, including Plan Expenses, and make all other payments relating to the Estate;

(vii)    establish, keep and maintain the Plan Reserves, including Plan Reserves for the benefit of the Disputed Claims;

(viii)    account separately for Plan Reserves for each Disputed Claim until the Claim is an Allowed Claim or Disallowed Claim;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(ix)        except as otherwise provided in the Plan, in the discretion of the Plan Administrator, set off against any Claim (and the payments or other distributions to be made pursuant to the Plan with respect to such Claims) any Cause of Action comprising Assets against the Holder of such Claim, but neither the failure to so set off any Cause of Action nor the allowance of any Claim shall constitute a waiver or release by the Estate or Plan Administrator of any Cause of Action constituting Assets;

(x)        market, negotiate, enter into and perform agreements for the sale or other disposition of the Assets;

(xi)        consult with and provide information to the Oversight Committee at such times and with respect to such issues relating to the implementation of the Plan as is appropriate;

(xii)        prepare and deliver written statements or notices, quarterly or otherwise, required by law, if applicable, to be delivered to Beneficiaries and the Oversight Committee;

(xiii)        prepare, or have prepared, and file with the appropriate taxing authority on behalf of the Estate any and all tax and information returns with respect to the Estate and implementation of the Plan (including, without limitation, United States federal, state, local or foreign tax or information returns, if any, required to be filed by the Estate) and pay taxes properly payable by the Estate, if any, and cause all taxes payable by the Estate, if any, to be paid exclusively out of the applicable assets;

(xiv)        maintain and preserve the originals of any and all instruments and documents pertaining to the Assets;

(xv)        take any of the foregoing actions, and execute any documents relating thereto, in the Plan Administrator's own name, on behalf of the Estate (including but not limited to all settlement agreements);

(xvi)        exercise and perform the rights, powers and duties held by the Estate, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, to provide for the prosecution, settlement, adjustment, retention and enforcement of claims and interests of the Estate, including but not limited to the prosecution and settlement of the Causes of

1    Action, and the authority to exercise all rights and powers under sections 506(c), 544-551, 1106,

2    1107 and 1108 of the Bankruptcy Code;

3        (xvii)    engage employees and professionals to assist the Plan Administrator with

4    respect to his or her responsibilities, including, but not limited to, any professionals employed by the

5    Trustee or  the Creditors' Committee;

6        (xviii)    prosecute, compromise and/or settle claims and Causes of Action and

7    objections to Claims on behalf of the Estate;

8        (xix)    appear on behalf of and represent the Estate in all proceedings in the Chapter

9    11 Case (in all events the Plan Administrator shall succeed the Trustee in respect to any such

10    proceedings as of the Effective Date);

11        (xx)    in the Plan Administrator's discretion, pursue, collect and liquidate any

12    remaining Assets of the Estate, and provide for the Distributions therefrom in accordance with the

13    provisions of the Plan;

14        (xxi)    manage the continued liquidation of the Estate's Assets, and to otherwise

15    administer the Estate;

16        (xxii)    stand in the shoes of the Debtor and assert or waive the attorney client

17    privilege and other privileges between the Debtor and his or its professionals, with respect to any

18    matter affecting Assets (provided, however, the Plan Administrator shall succeed to the Debtor's

19    privileges to the extent authorized or directed by the Bankruptcy Court);

20        (xxiii)    interpret the Plan in the Plan Administrator's reasonable discretion;

21        (xxiv)    enforce all agreements entered into by the Trustee and all orders entered

22    relating thereto;

23        (xxv)    execute and file documents and take all other actions as he or she deems

24    appropriate in his or her discretion relating to the dissolution of corporate entities in which the Estate

25    has a controlling interest; and

26        (xxvi)    exercise such other powers and authority as may be vested in or assumed by

27    the Plan Administrator by any Final Order, or as may be necessary and proper to carry out the

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

provisions of the Plan; provided, however, that such other powers and authority are not inconsistent with the Plan.

Subject to any requirement to reasonably consult with the Oversight Committee before instituting or settling any proceeding, asserting a Cause of Action or objecting to or settling an objection to a Claim, the Plan Administrator, on behalf of the Estate, shall have discretion to pursue, not pursue and/or settle any and all Causes of Action and objections to Claims as the Plan Administrator determines is in the best interests of the Estate, and the Plan Administrator shall not have any liability whatsoever for the outcome of that decision, except in the event that there is a Final Order of the Bankruptcy Court determining that any such person committed gross negligence or intentional misconduct.  In connection with the administration of the Estate, the Plan Administrator is authorized to perform any and all acts necessary and desirable to accomplish the purposes of the Plan.  In the event that the Plan Administrator cannot take any action, including, without limitation, the prosecution of any Causes of Action or the objection to any Claim, by reason of an actual or potential conflict of interest, the Oversight Committee acting by majority shall be authorized to take any such action(s) in his or her place and stead, including, without limitation, the retention of professionals for such purpose of taking such actions.

3.    **Retention and Compensation of Professionals**

The Plan Administrator may, without further order of the Bankruptcy Court, employ various professionals, including, but not limited to, counsel, consultants, and financial advisors, as necessary to assist him in fulfilling his obligations under the Plan, and on whatever fee arrangement the Plan Administrator deems appropriate, including, without limitation, contingency fee arrangements, subject to reasonable consultation with the Oversight Committee.  The Plan Administrator may employ professionals that were previously employed by the Debtor, the Trustee, and/or the Creditors' Committee.

To the extent there are sufficient available funds, the Plan Administrator shall include in the reserve(s) created for Plan Expenses reasonably sufficient Cash to cover the reasonably foreseeable fees and expenses of such professionals incurred, or to be incurred, after the Effective Date. Notwithstanding any other provision in the Plan to the contrary, neither the Plan Administrator nor

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Estate shall pay any Plan Expenses on account of the fees/expenses of the professionals and

agents of the Plan Administrator or the Oversight Committee until all Allowed Professional Fee

Claims have been paid or reserved for pursuant to the Plan.

### 4. **Compensation of Plan Administrator**

In addition to reimbursement for actual out-of-pocket expenses incurred by the Plan

Administrator, the Plan Administrator shall be entitled to compensation equal to three percent (3%)

of all funds distributed by the Plan Administrator pursuant to the Plan, due and payable upon

distribution of such funds, except that the Plan Administrator shall not be entitled to receive

compensation with respect to distributing the Effective Date Cash nor with respect to any ultimate

distribution made to the Debtor pursuant to the Plan.  The Plan Administrator shall not be required to

file an application for compensation in order to receive the compensation provided for herein.

For the avoidance of doubt, neither the Trustee nor the Plan Administrator shall be entitled to

compensation for funds distributed by Blanchard Enterprises to repay the Bank of America Loan.

To the extent there are sufficient available funds, the Plan Administrator shall include in the

reserve created for Plan Expenses reasonably sufficient monies to cover the reasonably foreseeable

fees and expenses of the Plan Administrator incurred, or to be incurred, after the Effective Date.

### 5. **Removal of Plan Administrator**

The Plan Administrator, including any successor Plan Administrator, may be removed as the

Plan Administrator by order of the Bankruptcy Court for good cause, upon motion by any party in

interest.

### 6. **Successor Plan Administrator**

In the event that the Plan Administrator is removed, resigns (with thirty (30) days' notice to

the Oversight Committee) or otherwise ceases to serve as the Plan Administrator, the U.S. Trustee,

after consultation with the Oversight Committee and the Debtor, shall select a successor Plan

Administrator within twenty (20) Business Days of such resignation, removal, or cessation of service

by the incumbent Plan Administrator.  The U.S. Trustee shall file with the Bankruptcy Court a notice

of such successor, which shall be served on the U.S. Trustee and all other parties on the Post-

Confirmation Service List.  Any successor Plan Administrator shall be subject to the same general

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  qualifications and shall have the same rights, powers, duties and discretion, and otherwise be in the

2  same position, as the originally named Plan Administrator.  If the Plan Administrator ceases to act as

3  Plan Administrator for any reason whatsoever, such Plan Administrator shall turn over to any

4  successor Plan Administrator, upon written request, any and all property and records of the Estate,

5  within twenty (20) days of the receipt of such written request.  References herein to the Plan

6  Administrator shall be deemed to refer to the successor Plan Administrator acting hereunder.

7         7.  **Records**

8        The Plan Administrator shall maintain good and sufficient books and records of account

9  relating to the Assets of the Estate, Available Cash and the management thereof, all post-Effective

10  Date transactions undertaken and transfers made by the Plan Administrator, all expenses incurred by

11  the Plan Administrator in connection with the implementation of the Plan after the Effective Date,

12  and all distributions contemplated or effectuated under the Plan.  Upon the entry of a final decree

13  closing the Chapter 11 Case, the Plan Administrator may destroy or otherwise dispose of all records

14  maintained by him or her.  Notwithstanding anything to the contrary, the Plan Administrator may,

15  without Bankruptcy Court approval, destroy any documents that he or she reasonably believes are no

16  longer required to effectuate the terms and conditions of this Plan.

17         8.  **Liability of the Plan Administrator**

18        The Plan Administrator shall not be personally liable for any claim asserted against the

19  Debtor, the Estate or the Plan Administrator, except as set forth below.  Notwithstanding anything to

20  the contrary set forth herein, no provision of the Plan shall be construed to relieve the Plan

21  Administrator from liability for his or her own gross negligence, fraud or willful misconduct as

22  determined by Final Order of the Bankruptcy Court, except that:

23        the Plan Administrator shall be liable only for the performance of such duties and obligations

24  as are set forth in this Plan or the Confirmation Order; and

25        the Plan Administrator shall not be liable for any error of judgment made in good faith, or

26  with respect to any action taken or omitted to be taken in good faith, unless the Plan Administrator

27  was grossly negligent.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**E.**     **The Oversight Committee**

The Oversight Committee is established pursuant to the terms of the Plan.  The Oversight Committee may consult with the Plan Administrator as set forth herein.

The Oversight Committee shall consist of members of the Creditors' Committee as of the Effective Date.  Nothing herein shall prohibit any qualified member of the Oversight Committee from providing a proxy for such member's vote on Oversight Committee matters to any other member of the Oversight Committee.  Unless otherwise specified herein, approval of a majority of the members of such Oversight Committee shall be required for the Oversight Committee to act.

The identities of the members of the Oversight Committee shall be set forth in a statement filed with the Court within five (5) Business Days of the Effective Date, and supplemented within five (5) Business Days after any change in its membership.  The Oversight Committee may adopt by-laws with respect to its operation so long as such by-laws are consistent with the terms of this Plan and the Confirmation Order.

Except for reimbursement of reasonable expenses and indemnification, the members of the Oversight Committee shall receive no other compensation or other payment for the performance of their duties hereunder.  The Oversight Committee may, without further order of the Court, employ counsel as needed to assist it in fulfilling its obligations under the Plan, provided, however, that counsel for any individual member of the Creditors' Committee or member of the Oversight Committee shall be deemed to have an actual conflict of interest and "disinterested" and therefore disqualified from serving as counsel to the Oversight Committee, and further provided that prior written notice of such employment and/or compensation arrangements shall be provided by the Oversight Committee to the Plan Administrator and the Debtor.  To the extent there are sufficient available funds, the Plan Administrator shall include in the reserve(s) created for Plan Expenses reasonably sufficient Cash to cover the reasonably foreseeable fees and expenses of such counsel to be incurred after the Effective Date.  The Oversight Committee's counsel's reasonable fees and expenses shall be paid with funds from the Plan Reserves.  The Oversight Committee shall have the authority to make reasonable requests of the Plan Administrator for information pertaining to the

1   implementation and consummation of the Plan and the Plan Administrator shall have the obligation

2   to reasonably comply with all such requests.

3       **F.      Indemnification of the Plan Administrator**

4       From and after the Effective Date, the Plan Administrator and the Oversight Committee and

5   their respective Related Parties (collectively, the "Indemnified Parties" and each an "Indemnified

6   Party") shall be, and hereby are, indemnified by the Estate, to the fullest extent permissible by

7   applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of

8   action, bonds, covenants, judgments, damages, attorneys' fees and defense costs and other assertions

9   of liability arising out of any such Indemnified Parties' good faith exercise of what such Indemnified

10  Party reasonably understands to be its powers or the discharge of what such Indemnified Party

11  reasonably understands to be its duties conferred by the Plan or by any order of the Bankruptcy

12  Court entered pursuant to, or in furtherance of, the Plan, applicable law, or otherwise (except only

13  for actions or omissions to act to the extent determined by a Final Order of the Bankruptcy Court to

14  be due to such Indemnified Party's own respective fraud, gross negligence or willful misconduct),

15  including but not limited to acts or omissions concerning pursuing or not pursuing the Causes of

16  Action or objections to Claims, or relating to the management, sale, or other disposition of any

17  Assets, on and after the Effective Date.  The foregoing indemnification shall also extend to matters

18  directly or indirectly, in connection with, arising out of, based on, or in any way related to (i) the

19  Plan; (ii) the services to be rendered pursuant to the Plan; (iii) any document or information, whether

20  verbal or written, referred to herein or supplied to the Plan Administrator; or (iv) proceedings by or

21  on behalf of any creditor, except to the extent any member of the Oversight Committee is acting on

22  behalf of itself as a Creditor or as agent for any Creditor in its individual capacity.

23      Subject to the terms of the Plan (including, without limitation, the funding of Plan Reserves),

24  the Estate shall, on demand, advance or pay promptly out of Available Cash, on behalf of the

25  applicable Indemnified Party, reasonable attorneys' fees and other expenses and disbursements

26  which such Indemnified Party would be entitled to receive pursuant to the foregoing indemnification

27  obligation; provided, however, that any Indemnified Party receiving any such advance shall execute

28  a written undertaking to repay such advance amounts if the Bankruptcy Court ultimately determines

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

by Final Order that such Indemnified Party is not entitled to indemnification hereunder due to the
fraud, gross negligence or willful misconduct of such Indemnified Party.

The Plan Administrator is authorized, but not required, to obtain and purchase (by using
Available Cash) insurance coverage with respect to the responsibilities, liabilities, and obligations of
the Indemnified Parties (or any other professionals hired by the Plan Administrator) under the Plan.
Any person entitled to indemnification shall have the right to employ such person's own separate
counsel reasonably acceptable to the Plan Administrator in any such action, at the Estate's expense,
subject to the terms and conditions of this Plan.

The indemnification provided for hereunder is separate from the indemnification obligations
of the Estate set forth in Section IX.B.2 hereof.

Notwithstanding anything in this Plan to the contrary, any and all indemnification provisions
set forth in any orders of the Bankruptcy Court entered at any time in any of the Chapter 11 Case
shall be expressly preserved and shall continue in full force and effect for the benefit of the parties
indemnified under such provisions, and any and all claims made thereunder shall be payable from
Available Cash, subject to the funding of Plan Reserves.

**G.    Termination of the Trustee's Duties**

As of the Effective Date, Richard Pachulski will be removed and relieved of any further
responsibilities as the Trustee for the Estate.  Mr. Pachulski, in his capacity as the Trustee and his
agents shall turn over to the Plan Administrator any and all property and records of the Estate.  The
Estate, through the Plan Administrator, shall reimburse Mr. Pachulski and the Trustee's
Professionals and agents for reasonable fees and expenses incurred in connection with such turnover
of property and records of the Estate to the Plan Administrator.

**H.    Termination of Duties; Closing of the Case**

The duties, responsibilities and powers of the Plan Administrator and, except as otherwise
provided herein, the Oversight Committee shall terminate after all Assets have been liquidated,
abandoned or otherwise disposed, and after all reasonably possible Distributions have been made to
Holders of Allowed Claims and the Plan Administrator seeks and obtains an order (or orders) for a
final decree in the Chapter 11 Case.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   The Plan Administrator shall not unduly prolong the implementation of the Plan and shall at

2   all times endeavor to resolve, settle or otherwise dispose of all claims that constitute Assets and to

3   effect the distribution of the Assets to Creditors in accordance with the terms of the Plan.

4   Notwithstanding any other provision herein, if and to the extent that any Assets of the Estate

5   remain after the payment of all Allowed Claims and Plan Expenses pursuant to the Plan, and the

6   Plan Reserves have been determined by the Court and the Plan Administrator to no longer be

7   necessary, in connection with the closing of the Chapter 11 Case, such Assets shall be abandoned to

8   the Debtor to the extent ordered by the Court.

9   **I.    Provision for Treatment of Disputed Claims**

10   The Plan Administrator shall have the exclusive right to object, on the behalf of the Estate, to

11   the allowance of Claims filed with the Bankruptcy Court with respect to which the liability is

12   disputed in whole or in part.   The Plan Administrator reserves the right to contest any interested

13   party's asserted standing to object to Claims.  All objections must be filed within 180 days of the

14   Effective Date and may be litigated to Final Order; provided, however, that the Plan Administrator

15   may compromise and settle any objection to Claims without the approval of the Bankruptcy Court,

16   but subject to reasonable consultation with the Oversight Committee as to any compromise that

17   would result in an Allowed Claim greater than $100,000.  At such time as a Disputed Claim is

18   resolved by Final Order and is Allowed or is settled by the Plan Administrator (in reasonable

19   consultation with the Oversight Committee, if so required), the Holder thereof will receive, as soon

20   as practicable thereafter, the Distributions to which such Holder is then entitled under the Plan.

21   The Plan Administrator shall account separately for Plan Reserves for each Disputed Claim

22   until the Claim is an Allowed Claim or Disallowed Claim (each a "Disputed Claim Reserve").  If a

23   Disputed Claims becomes an Allowed Claim, then the Holder of such Claim shall be paid solely

24   from its particular Disputed Claim Reserve, and in the event that there may be insufficient Cash in

25   such Disputed Claim Reserve, then the Holder of such Allowed Claim shall have no recourse against

26   any other Assets of the Estate.  In addition, the Plan Administrator shall specifically reserve

27   $950,000 in the Disputed Claim Reserve with respect to the administrative claim asserted by

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Integrated Financial Associates, Inc. on account of purported post-petition transfers.  *See* Docket Nos. 492, 495 and 511.

### J.    Distribution of Property Under the Plan

#### 1.    Manner of Cash Payments

Cash payments to domestic Holders of Allowed Claims will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Plan Administrator or, at the Plan Administrator's option, by wire transfer from a domestic bank.  Cash payments to foreign Holders of Allowed Claims, if any, may be paid, at the Plan Administrator's option, either in the same manner as payments to domestic entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

#### 2.    Setoff and Recoupment

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, THE PLAN ADMINISTRATOR, ON BEHALF OF THE ESTATES, MAY SET OFF, RECOUP, OR WITHHOLD AGAINST THE DISTRIBUTIONS TO BE MADE ON ACCOUNT OF ANY ALLOWED CLAIM, ANY CLAIMS THAT THE DEBTORS OR THE ESTATES MAY HAVE AGAINST THE ENTITY HOLDING THE ALLOWED CLAIM.  THE ESTATES AND THE PLAN ADMINISTRATOR WILL NOT WAIVE OR RELEASE ANY CLAIM AGAINST THOSE ENTITIES BY FAILING TO EFFECT SUCH A SETOFF OR RECOUPMENT; BY ALLOWING ANY CLAIM AGAINST THE DEBTORS OR THE ESTATES; OR BY MAKING A DISTRIBUTION ON ACCOUNT OF AN ALLOWED CLAIM.

#### 3.    No *De Minimis* Distributions

Notwithstanding anything to the contrary in this Plan, no cash payment of less than $50 will be made by the Plan Administrator to any Holder of an Allowed Claim.  No consideration will be provided in lieu of the *de minimis* distributions that are not made under this Article.  Allowed Claims that are entitled to a Pro Rata distribution of less than $50 shall continue to accrue until such time as the Pro Rata distribution on account of such Claim will be $50 or more.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4.    **No Distributions With Respect to Disputed Claims**

Notwithstanding any other Plan provision, distributions will be made on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim becomes an Allowed Claim or is deemed to be an Allowed Claim for Distribution purposes.

5.    **Undeliverable, Unclaimed Non-Negotiated Distributions**

Distributions to Holders of Allowed Claims will initially be made by mail as follows:

(a)    distributions will be sent to the address, if any, set forth on a filed proof of Claim as amended by any written notice of address change received by the Plan Administrator no later than ten (10) Business Days prior to the date of any Distribution;

(b)    if no such address is available, distributions will be sent to the address set forth on the Schedules; or

(c)    if no address is available by the foregoing means (b) and (c), distributions will be sent to the address set forth in the Debtor's records that are in the Plan Administrator's possession, if and to the extent that the Plan Administrator believes such records to be reliable.

If no address is available through any of the foregoing means, the Distribution will be deemed to be undeliverable.  If a Distribution is returned to the Plan Administrator as an undeliverable Distribution or is deemed to be an undeliverable Distribution, the Plan Administrator shall make no further Distribution to the entity holding the Claim on which the Distribution is being made unless and until the Plan Administrator is timely notified in writing of that entity's current address.  Subject to the following paragraph, until they become deliverable, the Plan Administrator will create one or more reserves for undeliverable Distributions for the benefit of the entities entitled to the Distributions.  These entities will not be entitled to any interest on account of the undeliverable Distributions.

Any Beneficiary that is otherwise entitled to an undeliverable Distribution and that does not, within forty-five (45) days after a Distribution is returned to the Plan Administrator as undeliverable, or is deemed to be an undeliverable Distribution, provide the Plan Administrator with a written notice asserting its claim to that undeliverable Distribution and setting forth a current, deliverable

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

address will be deemed to waive any claim to such undeliverable Distribution and will be forever

barred from receiving such undeliverable Distribution or asserting any Claim against the Debtor, the

Estate, or their respective property, or the Plan Administrator or the Oversight Committee.  Any

undeliverable Distributions that are not claimed under this Section will become Available Cash.

Nothing in the Plan requires the Plan Administrator or the Oversight Committee or any of its

members to attempt to locate any entity holding an Allowed Claim and whose Distribution is

undeliverable.

> If an instrument delivered as a Distribution to a Beneficiary is not negotiated within one

hundred and twenty (120) days after such instrument was sent to the Beneficiary, then the instrument

shall be null and void, the Beneficiary shall be deemed to have waived such Distribution, and it shall

become Available Cash.

## VIII.

## LITIGATION

> The Plan Administrator, on behalf of the Estate, shall retain, and, subject to reasonably

appropriate consultation with the Debtor and the Oversight Committee, may exclusively enforce, any

and all such claims, rights or Causes of Action, whether arising before or after the Petition Date, in

any court or other tribunal, including, without limitation, any bankruptcy court adversary proceeding

filed in the Chapter 11 Case.  The Plan Administrator shall have the exclusive right, authority, and

discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights and

Causes of Action, subject to reasonable consultation with the Debtor and the Oversight Committee

before taking any such action, but shall not be required to seek Bankruptcy Court approval.  With

respect to any matter affecting any Assets, the Plan Administrator stands in the place of the Debtor,

the Estate, the Trustee, the Plan Proponent, and the Creditors' Committee, and may take such actions

in their names without the need to intervene in, amend any pending actions or obtain any further

order of the Bankruptcy Court.  It is anticipated that on and after the Effective Date, the Plan

Administrator will focus on evaluating and prosecuting Causes of Action, objecting to certain

Claims and, to the extent applicable, asserting rights of setoff, counterclaim or recoupment.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Plan Administrator is authorized to exercise and perform the rights, powers and duties held by the Estate, including, without limitation, the authority under Bankruptcy Code section 1123(b)(3) to provide for the settlement, adjustment, retention and enforcement of claims and interests of the Estate, including, but not limited to all Causes of Action, subject to reasonable consultation with the Oversight Committee.

Unless a claim or Cause of Action against a person or entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order, the Plan Administrator, on behalf of the Estate, expressly reserves such claim or Cause of Action for later adjudication (including, without limitation, claims and Causes of Action which the Plan Administrator, the Trustee, the Debtor or the Creditors' Committee may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown at this time, or facts or circumstances which may change or be different from those now believed to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims or Causes of Action upon, or after, the Confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such claims or Causes of Action have been released in the Plan or other Final Order.

THE PLAN ADMINISTRATOR, SUBJECT TO REASONABLE CONSULTATION WITH THE DEBTOR AND THE OVERSIGHT COMMITTEE, WILL MAKE THE DECISION OF WHETHER OR NOT TO PURSUE ANY CAUSES OF ACTION AND TO SETTLE OR NOT SETTLE CAUSES OF ACTION.  THIS DECISION WILL BE BASED UPON THE PLAN ADMINISTRATOR'S REVIEW OF THE MERITS OF THE VARIOUS CAUSES OF ACTION AS WELL AS THE COSTS REQUIRED TO PROSECUTE SUCH CAUSES OF ACTION.  THE PLAN ADMINISTRATOR MAY SEEK TO RETAIN COUNSEL AND/OR OTHER ADVISORS TO PROSECUTE SOME OR ALL OF SUCH CAUSES OF ACTION, MAY SEEK TO FINANCE ANY COSTS RELATING TO THE PROSECUTION OF SUCH LITIGATION OR MAY DECIDE NOT TO PURSUE SUCH CAUSES OF ACTION AT ALL.  THE PLAN ADMINISTRATOR, THE OVERSIGHT COMMITTEE, AND THEIR RESPECTIVE COMPANIES, FIRMS,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PARTNERS, MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, PROFESSIONALS,

SUCCESSORS AND ASSIGNS SHALL NOT HAVE ANY LIABILITY ARISING OUT OF THE

GOOD FAITH DETERMINATIONS OF THE PLAN ADMINISTRATOR AND THE

OVERSIGHT COMMITTEE OF WHETHER OR NOT TO PURSUE PROSECUTION OF

AND/OR SETTLE THE FOREGOING CAUSES OF ACTION.

**IX.**

**EXCULPATION, RELEASES AND RELATED PROVISIONS**

**A.**    **Limitation of Liability for Plan/Case Participants in Connection with the Chapter 11 Case, the Plan, Disclosure Statement and Related Matters**

1.    **Exculpation of Plan/Case Participants**

Pursuant to section 1125(e) of the Bankruptcy Code, (i) the Trustee, (ii) the Creditors'

Committee, (iii) the members of the Creditors' Committee (solely in their capacities as such), (iv)

the Debtor's Professionals as employed by the Debtor's Estate prior to the appointment of the

Trustee, including, but not limited to, the Debtor's general insolvency counsel and financial advisor,

(v) the Plan Administrator, (vi) the Oversight Committee, (vii) the members of the Oversight

Committee (solely in their capacities as such), and (viii) the foregoing parties' respective Related

Parties (collectively, the "Plan/Case Participants") will neither have nor incur any liability to any

Person (including, without limitation, the Debtor and their Related Parties, Affiliates and Insiders)

for any act taken or omitted to be taken on and after the Petition Date in connection with or directly

or indirectly related to the Debtor, the Chapter 11 Case, any Assets, and any appeals of judgments or

orders of the Bankruptcy Court during the Chapter 11 Case, including, but not limited to (1) the

formulation, preparation, dissemination, negotiation, implementation, confirmation or consummation

of the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or

other agreement, pleading or document created, entered into or consented to by a Plan/Case

Participant, (2) the pursuit of Causes of Action, (3) the administration of the Chapter 11 Case, (4) the

management, operation, sale or other disposition or administration of the Debtor's assets and

properties during the Chapter 11 Case, (5) any actions taken or omissions not taken in or relating to

proceedings in state court, or (6) any other act taken or omitted to be taken in connection with the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Plan, the Disclosure Statement, or the Confirmation Order, including solicitation of acceptances of the Plan, except only for actions or omissions to act to the extent determined by a Final Order of the Bankruptcy Court to be due to such Plan/Case Participant's own respective fraud, gross negligence or willful misconduct ("Exculpated Conduct").  Nothing herein shall be construed as a release of or waiver of any Claim that arose or is deemed to have arisen prior to the Petition Date against the Debtor by any party.

### 2.    Injunction Prohibiting Actions Against Plan/Case Participants

All Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any Plan/Case Participant, whether directly, derivatively, on account of or respecting any claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct.  Any Plan/Case Participant injured by any willful violation of the injunctions provided in the Plan shall recover from the willful violator actual damages (including costs and attorneys' fees) and, in appropriate circumstances, punitive damages.

### 3.    Indemnification of Plan/Case Participants

From and after the Effective Date, the Plan/Case Participants shall be, and hereby are, indemnified by the Estate, to the fullest extent permissible by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees and defense costs and other assertions of liability directly or indirectly relating to the Exculpated Conduct.

Subject to the terms hereof, the Estate shall, on demand, advance or pay promptly out of Available Cash, on behalf of the applicable Plan/Case Participant, reasonable attorneys' fees and other expenses and disbursements which such Plan/Case Participant would be entitled to receive pursuant to the foregoing indemnification obligation; provided, however, that any such Plan/Case Participant receiving any such advance shall execute a written undertaking to repay such advance amounts if the Bankruptcy Court ultimately determines by Final Order that such Plan/Case Participant is not entitled to indemnification hereunder due to the fraud, gross negligence or willful misconduct of such Plan/Case Participant.

The Plan Administrator is authorized, but not required, to obtain and purchase (by using Available Cash) insurance coverage, to the extent available, with respect to the Estate's indemnification obligations hereunder.  Any person entitled to indemnification hereunder shall have the right to employ such person's own separate counsel reasonably acceptable to the Plan Administrator in any such action, at the Estate's expense, subject to the terms and conditions of this Plan.

The indemnification provided for hereunder is separate from the indemnification obligations of the Estate set forth in Section VII.F hereof.

Notwithstanding anything in the Plan to the contrary, any and all indemnification provisions set forth in any orders of the Bankruptcy Court entered at any time in any of the Chapter 11 Case shall be expressly preserved and shall continue in full force and effect for the benefit of the parties indemnified under such provisions.

**B.    Injunction Prohibiting Creditors' Actions Against the Estate and Related Assets**

In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against the Estate that arose prior to the Effective Date are enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Plan Administrator, or any of his respective property (including the Assets which are property of the Estate); (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Estate, or the Plan Administrator, or any of their respective property (including the Assets which are property of the Estate) with respect to any such Claim; (c) creating, perfecting or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Estate, or the Plan Administrator, or any of their respective property (including the Assets which are property of the Estate), with respect to any such Claim; (d) asserting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against any obligation due the Estate or any of their property with respect to any such Claim; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Plan with respect to such Claim; *provided that* the Plan Administrator may in his or her

discretion except a third party from the foregoing injunction on such terms and conditions he

determines appropriate without any court approval or notice.

Further, until the Plan Consummation Certification shall have been filed by the Plan

Administrator, all Creditors are enjoined from commencing or continuing in any manner, directly or

indirectly, any action or other proceeding of any kind against the Debtor with respect to the

Excluded Assets.

Notwithstanding the foregoing, nothing contained in this Section shall enjoin or prohibit (1)

the Holder of a timely-filed Proof of Claim from litigating its right to have such Claim declared an

Allowed Claim and paid in accordance with the distribution provisions of this Plan, (2) the

interpretation or enforcement by the Creditor of any of the obligations of the Debtor, the Estate or

the Plan Administrator under this Plan, or (3) lien holders from pursuing and enforcing the validity,

priority or extent of their lien rights and the allowed amount of their Secured Claims.  For the

avoidance of doubt, and notwithstanding any other provision contained in the Plan or the

Confirmation Order, nothing in the Plan or the Confirmation Order shall release any claims and/or

causes of action, or enjoin any Person (including, without limitation, the Estate and/or the Plan

Administrator) from commencing or continuing the prosecution of any claims and/or causes of

action against any Person or entity other than pursuant to the express terms of Article IX of the Plan.

### C.    Debtor's Verification of Assets

Pursuant to the Blanchard Declaration, the Debtor represents and warrants that, to the best of

his knowledge, he does not own, or have an interest in any assets other than those identified in the

Schedules and further acknowledges that all of those assets, including, without limitation, all of the

assets identified in Exhibit 1 attached to the Blanchard Declaration, are property of the Estate and

shall be administered and distributed by the Plan Administrator through and as part of the Plan.

### D.    Plan Administrator's Abandonment of Assets

Notwithstanding the Blanchard Declaration and the Debtor's verification of assets, on the

Effective Date the Estate shall release any and all right, claim and interest it has in and to the

Primary Residence, which shall be abandoned back to the Debtor, subject to all existing liens and encumbrances.

In addition, on the Effective Date, the Estate shall abandon and release any and all right, claim and interest it has in and to the following Assets of the Debtor:  (a) jewelry as disclosed in the Schedules with an insurable value that the Debtor represents and warrants does not exceed $170,000.00; (b) household furnishings and other personal effects, as disclosed in the Schedules, which the Debtor represents and warrants do not have a material value; (c) one 2010 Mercedes Benz CL 500; and (d) Section 529(a) college accounts with an aggregate balance of approximately $339,000.00.

On the Effective Date, the Estate shall be released from any liability to pay, or otherwise satisfy any and all obligations secured by any of the foregoing assets abandoned to the Debtor as of the Effective Date.

### E.    Limitation of Liability for the Debtor Releasees

On the Effective Date, and subject to, and excluding any and all terms, conditions, obligations, representations and warranties imposed by, or set forth in the Plan, the Plan Administrator shall release the Debtor, Kent Snyder, solely in his capacity as the Trust Protector of the Irrevocable Trust, and the members of the Debtor's family identified in the Blanchard Declaration (collectively, the "Debtor Releasees") from any and all claims that the Estate has, or may have against them, and each of them (the "Debtor Party Releases").  Any and all claims asserted by any Debtor Releasees against the Estate shall be deemed released, withdrawn and discharged as of the Effective Date and said Releasees shall not recover anything pursuant to the Plan except as expressly set forth in the Plan.

Notwithstanding the foregoing, the Debtor Releasees shall include the Car Wash Borrowers, but the Debtor Party Releases shall not release the Car Wash Borrowers from their obligations under the Modified Car Wash Notes.  Further, notwithstanding the foregoing, the Debtor Party Releases shall not (i) affect, limit, discharge or release either the claimant's or the Estate's rights, remedies, obligations and defenses with respect to Proof of Claim No. 20 (asserted by GNC Express Partners,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    L.P.); or (ii) extend to any undisclosed Assets of the Debtor, and the Plan Administrator reserves all

2    of the Estate's rights and remedies to pursue such Assets.

3         **F.**     <u>**Discharge**</u>

4         The Debtor shall not receive a discharge unless and until the Plan has been consummated

5    such that the Plan Administrator has filed a notice and certification that all of the Debtor's payments

6    and obligations under the Plan have been fully and completely performed (the "<u>Plan Consummation</u>

7    <u>Certification</u>").  Thirty days prior to the Plan Administrator's filing of the Plan Consummation

8    Certification, the Plan Administrator shall give notice to the Oversight Committee that the Plan

9    Consummation Certification will be filed.  Upon the Plan Administrator's filing of the Plan

10   Consummation Certification, the Debtor shall be deemed to have received a discharge in the Chapter

11   11 Case pursuant to section 524 of the Bankruptcy Code.

12        Unless an objection to this <u>Section IX.F</u> of the Plan is made in writing by any Creditor

13   affected by the Plan on or before the applicable objection deadline set by the Court, an order (which

14   order may be the Confirmation Order) may be entered by the Bankruptcy Court granting the Debtor

15   a discharge pursuant to Section 524 of the Bankruptcy Code.

16        Any discharge entered in the Case shall not discharge the Debtor from any debts that are

17   nondischargeable under section 523 of the Bankruptcy Code or the obligations created by this Plan.

18                              **X.**

19               **OTHER PLAN PROVISIONS**

20        **A.**     <u>**Conditions Precedent to the Effective Date**</u>

21        The Plan will not be consummated or become binding unless and until the Effective Date

22   occurs.  A notice stating that the Effective Date has occurred shall be filed with the Court by the Plan

23   Administrator within three (3) Business Days after the Effective Date.

24        The following are conditions precedent to the Effective Date of this Plan:

25        (i)     creditor MB-Bona LLC and the Debtor shall have entered into a stipulation in form

26   and substance reasonably acceptable to both parties, approved by the Bankruptcy Court, which

27   stipulation shall provide that: creditor MB-Bona LLC shall forbear from prosecuting or otherwise

28   proceeding with its nondischargeability action against the Debtor pending before this Court as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Adversary Proceeding Case No. 8:14-ap-01261 unless and until there is an Event of Default under

the Plan; and (b) so long as no Event of Default shall have occurred under the Plan, MB-Bona LLC

shall dismiss said adversary proceeding, and shall be deemed to have dismissed said adversary

proceeding, with prejudice, upon the filing of the Plan Consummation Certification;

(ii)    all of the funds in the Blanchard Enterprises Accounts and the Trust Accounts shall

have been transferred to the Trustee or the Plan Administrator, in accordance with section VII.A.1,

above;

(ii)    the Car Wash Modification Order shall have become a Final Order, and the Modified

Car Wash Notes shall be in full force and effect;

(iii)    the Bankruptcy Court shall have entered a Confirmation Order that is in form and

substance reasonably satisfactory to the Plan Proponent;

(iv)    the Confirmation Order shall have become a Final Order;

(v)    no stay of the Confirmation Order is in effect; and

(vi)    the Plan Administrator, after reasonable consultation with the Creditors' Committee,

shall reasonably determine that the Estate has sufficient Cash to fund the Plan Reserves.

Notwithstanding the foregoing, any or all of the foregoing conditions in whole or in part may

be waived by the Plan Proponent (such waiver shall not require any notice, Bankruptcy Court order,

or any further action).

**B.    <u>Termination of Creditors' Committee</u>**

On the Effective Date, the Creditors' Committee shall cease to exist and its members,

designated representatives and/or agents (including, without limitation, attorneys and other advisors

and agents) shall, subject to those matters set forth below, be released and discharged from any

further authority, duties, responsibilities and obligations relating to, arising from, or in connection

with the Creditors' Committee.  The Creditors' Committee shall continue to exist after such date

solely with respect to all the applications filed pursuant to sections 330 and 331 of the Bankruptcy

Code seeking payment of fees and expenses incurred by any Professional.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

C.    **Living Expense Loan and Seasmoke Advance**

Commencing on the first day of the calendar month immediately following the Effective Date, and thereafter on the first day of each calendar month until the earlier of: (a) the eleventh month following the Effective Date, or (b) September 1, 2016, the Estate shall pay to the Debtor, or his nominee, the sum of $25,000 for living and other expenses, of which $20,000 per month shall be treated as an advance to the Debtor (said advances collectively referred to herein as the "Living Expense Loan"). In addition, the Living Expense Loan shall include a one-time advance of $90,000 to Seasmoke Partners to cover a year of budgeted operating expenses to be made on the Effective Date (the "Seasmoke Advance"). The Living Expense Loan and Seasmoke Advance shall be repaid and recouped as set forth in Section VII.A.2, above. Until the Plan has been fully performed, the Debtor shall not be entitled to receive, nor shall he receive, any other compensation on account of services performed with respect to the Seasmoke Projects or Seasmoke Partners.

D.    **Executory Contracts and Unexpired Leases**

1.    **Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date, any and all agreements executed by the Debtor before the Effective Date, other than agreements that were previously either assumed and assigned or rejected either by a Final Order or under Bankruptcy Code section 365, to the extent that these agreements constitute executory contracts or unexpired leases under Bankruptcy Code section 365, shall be rejected. For the avoidance of doubt, the lease agreement for the Mercedes CLS 550 is an executory contract and shall be rejected on the Effective Date.

The Confirmation Order shall constitute a Final Order approving the rejection provisions set forth in this Section X.D.1 of the Plan.

2.    **Bar Date for Rejection Damage Claims**

Any Rejection Damage Claims arising from rejection under the Plan of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served on the Plan Administrator and his or her counsel within thirty (30) days after the Effective Date. Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable against the Debtor, the Estate, and the Plan Administrator, and their property, and the entities holding these

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Claims will be barred from receiving any distributions under the Plan on account of their Rejection Damage Claims.  The Plan Administrator shall have the right to object to any such Rejection Damage Claims; provided, however, that any such objections must be served and filed not later than one hundred twenty (120) days after the Effective Date.

### E.    Entry of a Final Decree

Promptly following the completion of all Distributions contemplated by this Plan, the Plan Administrator will file a motion with the Bankruptcy Court to obtain the entry of final decrees.

### F.    United States Trustee Fees and Reports

Pursuant to section 1129(a)(12) of the Bankruptcy Code, any outstanding quarterly fees due and owing to the U.S. Trustee under 28 U.S.C. § 1930(a)(6) and any applicable interest pursuant to 31 U.S.C. § 3717 shall be paid from Available Cash.  After the Effective Date, the Plan Administrator shall file post-confirmation quarterly disbursement reports and pay from Cash on hand or the Plan Reserves all quarterly fees to the U.S. Trustee which are required by applicable law.  The Plan Administrator shall include in the reserve created for Plan Expenses reasonably sufficient monies to cover the quarterly fees of the U.S. Trustee incurred, or to be incurred, after the Effective Date.

### G.    Post-Effective Date Effect of Evidences of Claims

Commencing on the Effective Date, instruments, notes and other evidences of Claims will represent only the right to receive the Distributions contemplated under the Plan.

### H.    Recourse

No Person entitled to receive a payment or Distribution under the Plan will have any recourse against the Trustee, the Creditors' Committee, the members of the Creditors' Committee (in their capacity as such), the Plan Administrator, the Oversight Committee or the members thereof and their respective Related Parties other than the right to receive Distributions in accordance with the terms of the Plan.

### I.    Section 1146 Exemption

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

implementation of, or as contemplated by, the Plan or the revesting, transfer or sale of any real or

personal property of the Debtor pursuant to, in implementation of, or as contemplated by, the Plan

shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or

fee.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or

governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the

Confirmation Order, be ordered and directed to accept such instrument, without requiring the

payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or

similar tax.

### J.    **No Admissions**

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed, is revoked

or otherwise the Effective Date does not occur, the Plan will be null and void, and nothing contained

in the Plan or the Disclosure Statement will: (1) be deemed to be an admission by the Plan Proponent

with respect to any matter discussed in the Plan, including liability on any Claim or the propriety of

any Claim's classification; (2) constitute a waiver, acknowledgement, or release of any Claims; or

(3) prejudice in any manner the rights of the Plan Proponent or any other person in any further

proceedings.

### K.    **Withdrawal of the Plan**

The Plan Proponent reserves the right to withdraw the Plan before the Confirmation Date.

### L.    **Severability of Plan Provisions**

If, before Confirmation, the Bankruptcy Court holds that any Plan term or provision is

invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so

that it is valid and enforceable to the maximum extent possible consistent with the original purpose

of that term or provision.  That term or provision will then be applicable as altered or interpreted,

except if such term or provision is inconsistent with the intent of the Plan Proponent, in which case

the Plan may be unilaterally withdrawn by the Plan Proponent.  Notwithstanding any such holding,

alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and

effect and will in no way be affected, impaired, or invalidated.  The Confirmation Order will

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   constitute a judicial determination providing that each Plan term and provision, as it may have been

2   altered or interpreted in accordance with this Article, is valid and enforceable under its terms.

3   **M.      Governing Law**

4          The rights and obligations arising under the Plan and any agreements, contracts, documents,

5   or instruments executed in connection with the Plan will be governed by, and construed and enforced

6   in accordance with, California law without giving effect to California's conflicts of law principles,

7   unless a rule of law or procedure is supplied by: (1) federal law (including the Bankruptcy Code and

8   the Bankruptcy Rules); or (2) an enforceable, express choice-of-law provision in any document

9   provided for, or executed under or in connection with, the Plan terms.

10   **N.      Retention of Jurisdiction**

11          Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective

12   Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case after the Effective Date

13   to the extent legally permissible, including, without limitation, jurisdiction to:

14          (1)      to hear and determine objections to Claims;

15          (2)      to hear and determine any dispute arising under the Plan, its implementation and the

16   execution of any necessary documents thereunder;

17          (3)      to enter and implement other orders, or take such other actions as may be necessary or

18   appropriate to restrain interference by any entity with consummation or enforcement of the Plan,

19   except as otherwise provided in the Plan;

20          (4)      to grant extensions of any deadlines set forth in the Confirmation Order as may be

21   appropriate;

22          (5)      to enforce all discharge, release and injunction provisions under the Plan;

23          (6)      to consider and rule upon requests for final compensation;

24          (7)      to hear and determine all motions, adversary proceedings, applications, and contested

25   or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be

26   instituted by the Plan Administrator, the Oversight Committee or the Estate after the Effective Date,

27   including, without limitation, all Causes of Action;

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(8)      to determine any other applications, adversary proceedings, and contested matters pending on the Effective Date;

(9)      to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein;

(10)      to resolve disputes as to the ownership of any Claim;

(11)      to hear and determine timely objections to Administrative Claims and Claims;

(12)      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(13)      to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(14)      to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

(15)      to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(16)      to hear and determine any issue for which the Plan requires a Final Order of the Court;

(17)      to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(18)      to hear and determine any Causes of Action preserved under the Plan under sections 544, 547, 548, 549, 550, 551, 553, and 1123(b)(3) of the Bankruptcy Code;

(19)      to hear and determine any matter regarding the existence, nature, and scope of the releases, exculpation, indemnification and injunctions provided in Article IX of this Plan;

(20)      to hear and determine any issues relating to any asserted claims and judgments against the Plan/Case Participants; and

(21)      to enter a final decree closing the Chapter 11 Case.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### O.    Taxes and Withholdings

Distributions made to or by the Plan Administrator under or in connection with the Plan may be subject to federal and/or state taxes, if applicable.  If applicable, the Plan Administrator shall have paid any such valid tax liabilities that may be owed by the Estate.  The Plan Administrator shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate.  The Plan Administrator shall be authorized to take all actions necessary to comply with applicable withholding and recording requirements.

Notwithstanding anything herein to the contrary, all of the tax attributes of the Debtor, Blanchard Enterprises, Ranco Realty, and Seasmoke Partners, including, without limitation, state and federal net operating loss carryforwards and capital loss carryforwards (the "Tax Attributes"), shall be, and are deemed to be Assets of the Estate and shall be used and applied for the benefit of the Estate.  Except as provided below, the Debtor shall not be permitted to use any of these tax attributes until the Plan Administrator has utilized them to the maximum extent possible and permissible for the benefit of the Estate.

The Plan Administrator shall use the Tax Attributes to offset the taxable gains or income recognized by (i) Seasmoke Partners prior to the Effective Date, and (ii) the Estate following the Effective Date on account of the interest in Seasmoke Partners whether owned by the Estate, held by the Estate or pledged to the Estate.  Upon the termination of the Chapter 11 Case, any unused Tax Attributes shall revert to the Debtor.  If at any time the Plan Administrator determines that the Estate has insufficient unused Tax Attributes to offset all of the current and projected taxable gains or income recognized, or to be recognized by the Estate (including those recognized by the Estate with respect to Seasmoke Partners), then the Debtor shall reimburse the Estate to the extent of such actual or projected shortfall (the "Tax Attribute Reimbursement").  Each such Tax Attribute Reimbursement shall be recouped by the Plan Administrator first from the Seasmoke Distributions payable to the Debtor, and if insufficient, then from the Debtor personally.  The amount of the Tax Attribute Reimbursement shall be equal to the following:

(1)    the difference between (i) the tax liability the Estate incurs under the Plan with all of the gains of Seasmoke Partners included in the Estate, and (ii) the tax liability the Estate would incur

if the Estate excluded (a) the gains Seasmoke Partners recognized prior to the Effective Date, and (b) the gains attributed to the Debtor on account of his 50% ownership interest in Seasmoke Partners following the Effective Date; plus

(2)    an amount equal to the projected taxes, if any, payable by the Estate on account of such reimbursement.

Notwithstanding any other provision of this Plan, each Holder of an Allowed Claim that has received a distribution of Cash shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation, on account of such distribution.

**P.    Successors and Assigns**

Unless otherwise specified in the Plan, the rights, benefits, and obligations of any entity referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of that entity.

**Q.    Saturday, Sunday, or Legal Holiday**

If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

## XI.

## CONFIRMATION

**A.    Plan Modification**

Subject to the restrictions set forth in Bankruptcy Code section 1127, the Plan Proponent reserves the right to alter, amend, or modify the Plan before it is substantially consummated.

**B.    Nonconsensual Confirmation**

If any impaired Class of Claims fails to accept this Plan, and the Plan Proponent therefore cannot confirm the Plan in accordance with Bankruptcy Code section 1129(a)(8), the Plan Proponent reserves the right to: (1) request that the Bankruptcy Court confirm this Plan under Bankruptcy Code section 1129(b); or (2) modify this Plan in accordance with Bankruptcy Code section 1127(a).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## XII.

## <u>RECOMMENDATIONS AND CONCLUSION</u>

The Plan Proponent strongly believes that Plan confirmation and implementation are preferable to any feasible alternative because the Plan will likely provide Creditors holding Claims with greater and more prompt recoveries than any available alternatives.

Dated:  November 12, 2015                 Chapter 11 Trustee in the Randall William Blanchard case

_____
Richard M. Pachulski, as Trustee

Submitted by:

_/s/ Teddy M. Kapur_____
Jeremy V. Richards (CA Bar No. 102300)
Teddy M. Kapur (SBN 242486)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone:  310/277-6910
Facsimile:  310/201-0760
jrichards@pszjlaw.com
tkapur@pszjlaw.com

Attorneys for Richard M. Pachulski, Chapter 11 Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

## SEASMOKE NOTES

1.      That certain Promissory Note dated June 17, 2013, in the amount of $94,500 issued by Blanchard Enterprises, LLC as Lender to Seasmoke Partners, LLC as Borrower that accrues interest at the rate of 10.0% per annum and has a maturity date of June 17, 2016.  The outstanding balance on such note was $112,492 as of March 31, 2015.

2.      That certain Promissory Note dated January 7, 2014, in the amount of $20,000 issued by Randall W. Blanchard as Lender to Seasmoke Partners, LLC as Borrower that accrues interest at the rate of 10.0% per annum and has a maturity date of January 7, 2017.  The outstanding balance on such note was $22,462 as of March 31, 2015.

3.      That certain Promissory Note dated January 22, 2014, in the amount of $25,000 issued by Randall W. Blanchard as Lender to Seasmoke Partners, LLC as Borrower that accrues interest at the rate of 10.0% per annum and has a maturity date of January 22, 2017.  The outstanding balance on such note was $28,077 as of March 31, 2015.

4.      That certain Promissory Note dated February 6, 2014, in the amount of $70,000 issued by Randall W. Blanchard as Lender to Seasmoke Partners, LLC as Borrower that accrues interest at the rate of 10% per annum and has a maturity date of February 6, 2017.  The outstanding balance on such note was $77,902 as of March 31, 2015.

5.      That certain Promissory Note dated February 24, 2014, in the amount of $20,000 issued by Randall W. Blanchard as Lender to Seasmoke Partners, LLC as Borrower that accrues interest at the rate of 10% per annum and has a maturity date of February 24, 2017.  The outstanding balance on such note was $22,258 as of March 31, 2015.

6.      That certain Promissory Note dated April 22, 2014, in the amount of $2,000 issued by Randall W. Blanchard as Lender to Seasmoke Partners, LLC as Borrower that accrues interest at the rate of 10% per annum and has a maturity date of April 22, 2017.  The outstanding balance on such note was $2,190 as of March 31, 2015

7.      That certain Promissory Note dated May 30, 2014, in the amount of $4,739.26 issued by Randall W. Blanchard as Lender to Seasmoke Partners, LLC as Borrower that accrues interest at the rate of 10% per annum and has a maturity date of May 30, 2017.  The outstanding balance on such note was $5,149 as of March 31, 2015.

8.      That certain Promissory Note dated June 20, 2014, in the amount of $50,000 issued by Randall W. Blanchard as Lender to Seasmoke Partners, LLC as Borrower that accrues interest at the rate of 10% per annum and has a maturity date of June 20, 2017.  The outstanding balance on such note was $53,857 as of March 31, 2015.

9.      That certain Promissory Note dated September 26, 2014, in the amount of $10,000 issued by Blanchard Enterprises, LLC as Lender to Seasmoke Partners, LLC as Borrower that accrues interest at the rate of 10% per annum and has a maturity date of September 26, 2017.  The outstanding balance on such note was $10,506 as of March 31, 2015.

10.     That certain Promissory Note dated October 14, 2014, in the amount of $130,000 issued by Blanchard Enterprises, LLC as Lender to Seasmoke Partners, LLC as Borrower that accrues interest at the rate of 10% per annum and has a maturity date of October 14, 2017.  The outstanding balance on such note was $135,609 as of March 31, 2015.

## DECLARATION OF RANDALL WILLIAM BLANCHARD

I, Randall William Blanchard, declare as follows:

1.    I am the Debtor in the Chapter 11 Case and make this declaration in support of the *Plan of Reorganization Proposed by Chapter 11 Trustee for Debtor Randall William Blanchard* (the "Plan"). Undefined capitalized terms contained in this declaration have the meaning ascribed to them in the Plan. The facts stated herein are of my own personal knowledge, and if called on to testify, I could and would competently testify thereto.

2.    I represent and warrant that, to the best of my knowledge, the Schedules are full, complete and accurate. The Assets identified in Exhibit 1 attached hereto were not included in the Schedules because I do not believe they are property of the estate; however, for the purposes of proposing a consensual of reorganization, I have agreed that the Assets identified in Exhibit 1 shall be treated as property of the Estate and shall be administered and distributed by the Plan Administrator through and as part of the Plan. I represent and warrant that the Seasmoke Projects listed on Exhibit 1 are a complete list of all of the real property projects for Seasmoke Partners, LLC ("Seasmoke Partners").

3.    I represent and warrant that, to the best of my knowledge, (a) the jewelry, as disclosed in the Schedules, has an insurable value that does not exceed $170,000.00 on a liquidation basis; and (b) household furnishings and other personal effects, as disclosed in the Schedules, do not have a material value on a liquidation basis.

4.    Kent Snyder, solely in his capacity as the Trust Protector of the Irrevocable Trust, and following members of my immediate family shall be the Debtor Releasees described in Section IX, E of the Plan: Marynn Blanchard, Gregory Brett Blanchard, Brent Douglas Blanchard, Ryan Randall Blanchard, Steven William Blanchard, Wendy Blanchard Evans, Victoria Brianne Blanchard, and William Randall Blanchard.

5.    Notwithstanding any documentation to the contrary, I agree and acknowledge that Seasmoke Partners, LLC has a 60% interest in Black River Energy, LLC ("Black River") and that neither I nor any of my family members has an interest in the 40% balance of the interests of Black River. I acknowledge and agree that all of Seasmoke Partners' interests in Black River are being

1  contributed to the Estate as part of the Plan and that the Plan Administrator has the sole authority to

2  liquidate 100% of the interests in Black River without consultation with or consent from me,

3  Seasmoke Partners, or any holders of interests in Black River.

4         To the best of my knowledge, I declare under penalty of perjury under the laws of the State

5  of California, that the foregoing is true and correct.

6         Executed this 5th day of November 2015, at Irvine, California.

7

8  _____
   Randall William Blanchard

9



10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Exhibit 1

## Other Estate Assets

- LMA Pledged Accounts:
    - Account x4100 in the name of Blanchard Enterprises;
    - Account x4002 in the name of Blanchard Enterprises;
    - Account x7264 in the name of Blanchard Enterprises; and
    - Account x2142 in the name of Meryton Management.

- The Debtor, as manager of Meryton Management, serves as manager of real property projects for Seasmoke Partners, LLC, and is entitled to receive 10% of the profits and losses on these projects as they are monetized (the "Seasmoke Projects"). The following is a complete list of all of the Seasmoke Projects:
    - Loynes Beach Partners, LLC;
    - The Irvine Projects, i.e., Sand Dollar Cartwright, LLC, Sand Dollar Gillette, LLC, Sand Dollar Barranca 1, LLC, and Sand Dollar Barranca 2, LLC;
    - Vico, LLC;
    - Palm Canyon 65, LLC; and
    - Black River Energy, LLC.

- Out of an abundance of caution, the Debtor hereby discloses the following interests in entities that are no longer operating:
    - 67% interest in Ranco Capital, LLC;
    - 35% interest in Twelve Oaks Partners, LLC;
    - 60% interest in Ranco Capital;
    - Sand Dollar Homes, Inc.;
    - Sand Dollar Communities, Inc.;
    - Nevada Note Investors, LLC; and
    - Blacksand Resources.

- The Car Wash Notes (as defined in the Plan) that were assigned to MB-Bona prior to the Petition Date, and as of the date of the Plan, remain in MB-Bona's possession.

- The Car Wash Note due to Ranco Realty Group.

- The Car Wash Notes due to Blanchard Enterprises



## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

10100 Santa Monica Blvd., #1300, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): ***FIFTH AMENDED PLAN OF REORGANIZATION PROPOSED BY CHAPTER 11 TRUSTEE FOR DEBTOR RANDALL WILLIAM BLANCHARD*** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **November 12, 2015**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠        Service information continued on attached pg.

**2.  SERVED BY UNITED STATES MAIL:**  On **November 12, 2015,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Mr. Jack Rendell
Benefit National Property Management Inc.
29995 Technology Drive,  #105
Murrieta CA 92563

☐        Service information continued on attached pg.

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **November 12, 2015**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Federal Express**:
Hon. Scott Clarkson
United States Bankruptcy Court
411 W. Fourth Street, Courtroom 5-C
Santa Ana, CA  92701

☐        Service information continued on attached pg.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 12, 2015 | Diane H. Hinojosa | /s/ Diane H. Hinojosa |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                **F 9013-3.1.PROOF.SERVICE**

**1.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:**

- Reem J Bello     rbello@wgllp.com, kadele@wgllp.com;lfisk@wgllp.com;tziemann@wgllp.com
- Jess R Bressi     jess.bressi@dentons.com, kimberly.sigismondo@dentons.com
- Frank Cadigan     frank.cadigan@usdoj.gov
- Greg P Campbell     ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- Candace Carlyon     ccarlyon@mpplaw.com, docket@ccarlyon.com,ccarlyon@ccarlyon.com
- Paul B George     , beldingt@lanepowell.com
- Paul B George     docketing-pdx@lanepowell.com, beldingt@lanepowell.com
- Jeffrey I Golden     jgolden@wgllp.com, kadele@wgllp.com;lfisk@wgllp.com;tziemann@wgllp.com
- Nancy S Goldenberg     nancy.goldenberg@usdoj.gov
- Jeffrey M Goldman     goldmanj@pepperlaw.com, allenjs@pepperlaw.com
- Jacob C Gonzales     jgonzales@weintraub.com,
  gwaldron@weintraub.com;lgraham@weintraub.com;autodocket@weintraub.com;shamada@weintraub.com
- Matthew Grimshaw     mgrimshaw@marshackhays.com, ecfmarshackhays@gmail.com
- Christopher H Hart     chart@schnader.com, nwhite@schnader.com
- Garrick A Hollander     ghollander@winthropcouchot.com,
  pj@winthropcouchot.com;vcorbin@winthropcouchot.com;mconour@winthropcouchot.com
- Teddy M Kapur     tkapur@pszjlaw.com
- Ori Katz     okatz@sheppardmullin.com,
  cshulman@sheppardmullin.com;ezisholtz@sheppardmullin.com
- Alan J Kessel     kessela@pepperlaw.com, philipsj@pepperlaw.com
- Jeannie Kim     jkim@winthropcouchot.com, vcorbin@winthropcouchot.com;pj@winthropcouchot.com
- Kay S Kress     kressk@pepperlaw.com, henrys@pepperlaw.com
- Adam J McNeile     amcneile@sheppardmullin.com
- Brett Ramsaur     bramsaur@swlaw.com, kcollins@swlaw.com
- Jeremy V Richards     jrichards@pszjlaw.com, bdassa@pszjlaw.com;imorris@pszjlaw.com
- Todd C. Ringstad     becky@ringstadlaw.com
- Michael G Spector     mgspector@aol.com, mgslawoffice@aol.com
- United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov
- Marc J Winthrop     mwinthrop@winthropcouchot.com,
  pj@winthropcouchot.com;vcorbin@winthropcouchot.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**