Jeremy V. Richards (CA Bar No. 102300)
Teddy M. Kapur (CA Bar No. 242486)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:  jrichards@pszjlaw.com
         tkapur@pszjlaw.com

Attorneys for Richard M. Pachulski,
Chapter 11 Trustee



**FILED & ENTERED**

**DEC 09 2015**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY nbolte     DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>RANDALL WILLIAM BLANCHARD,<br><br>Debtor. | Chapter 11<br><br>Case No.: 8:14-bk-14105-SC<br><br>**ORDER CONFIRMING FIFTH AMENDED PLAN OF REORGANIZATION PROPOSED BY CHAPTER 11 TRUSTEE FOR DEBTOR RANDALL WILLIAM BLANCHARD** |

Richard M. Pachulski, in his capacity as the duly appointed Chapter 11 trustee (the "Trustee" or "Plan Proponent") in the Chapter 11 case of Randall William Blanchard (the "Debtor"), having filed and proposed the *Fifth Amended Plan of Reorganization Proposed By Chapter 11 Trustee for Debtor Randall William Blanchard* [Docket No. 598] (the "Plan")[1]; a hearing to consider Confirmation and matters related thereto having been held before this Court on September 17, 2015 (the "Confirmation Hearing"); the appearances having been as noted on the record; and based upon the record of the Confirmation Hearing, all proceedings held before the Court in the Chapter 11 Case and the record therein, the Court having reviewed and considered all of the documents referenced in the *Findings of Fact and Conclusions of Law in Support of Order*

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such term as set forth in the Plan.

DOCS_LA:293781.1 68704/001

*Confirming the Fifth Amended Plan of Reorganization Proposed By Chapter 11 Trustee for Debtor Randall William Blanchard* (the "<u>Findings</u>") and having entered the Findings, which are hereby incorporated into this Order, IFA having represented on the record that all of its objections to confirmation of the Plan have either been satisfied or waived and there being no remaining objections to Confirmation of the Plan and good cause appearing,

**IT IS HEREBY ORDERED** that:

**A.    Plan Confirmed and Modifications Approved**

1.    The Plan, as reflected on the Court's official docket as Docket No. 598, is hereby confirmed pursuant to Section 1129 of the Bankruptcy Code.  Any objections to Confirmation of the Plan, including the IFA Objection (as defined in the Findings), whether formal or informal, written or oral, unless previously withdrawn, are overruled.  All withdrawn objections are hereby treated as withdrawn with prejudice.

2.    The Plan Modifications (as defined in the Findings) are hereby approved pursuant to Section 1127 of the Bankruptcy Code and Rule 3019 of the Federal Rules of Bankruptcy Procedure, without the need of any further disclosure to, or resolicitation of votes of, Creditors and parties in interest.

3.    The provisions of the Plan and this Order will bind the Debtor, the Estate and all creditors of the Debtor, whether or not the Claims of these entities are impaired under the Plan, whether or not these entities have voted to accept or reject the Plan, and whether or not these entities have filed proofs of Claim in the Chapter 11 Case.

**B.    Vesting of Assets**

4.    Notwithstanding Bankruptcy Code section 1141(b), on and as of the Effective Date, the Assets, except for the Excluded Assets, shall vest in the Estate and shall remain in existence until all Distributions under the Plan have been made; provided, however, that the Plan Administrator, on behalf of the Estate, after reasonable consultation with the Oversight Committee, may abandon any Asset that the Plan Administrator believes, in good faith, has no meaningful value to the Estate.  On the Effective Date, the Trustee will transfer all of the Effective Date Cash to the Plan Administrator.  As of the Effective Date, all Assets vested in the Estate shall be free and clear

of all Claims, Liens, and interests except as otherwise specifically provided in the Plan or in this Order.

### C. Appointment of the Plan Administrator and Oversight Committee

5. Mr. Richard Pachulski is appointed as the Plan Administrator as of the Effective Date, and is authorized to carry out his duties and powers as set forth in the Plan, without further order of the Bankruptcy Court (unless otherwise expressly provided in the Plan). As of the Effective Date, the Plan Administrator shall be the successor in interest to the Trustee and shall be the sole representative of the Estate, and in such capacity, may exercise rights, power and authority consistent with the Plan, and bankruptcy and non-bankruptcy laws.

6. Sandra Norris, Trustee of the Rodger & Sandra Norris 1990 Living Trust Dated 8/9/1990, IFA and MB-Bona, LLC are appointed as the members of the Oversight Committee as of the Effective Date, and are authorized to carry out their duties and powers as set forth in the Plan.

7. The compensation and reimbursement of expenses payable to the Plan Administrator, and the reimbursement of expenses of the Oversight Committee, shall be in accordance with Article VII.D.4 and Article VII.E, respectively, without need of further Court order. The Plan Administrator, the Oversight Committee and their respective Related Parties shall be indemnified by the Estate, to the fullest extent permissible by applicable law, in accordance with Article VII.F of the Plan.

8. The Plan Administrator shall not be personally liable for any claim asserted against the Debtor, the Estate or the Plan Administrator, except as set forth below. Notwithstanding anything to the contrary set forth herein, no provision of the Plan shall be construed to relieve the Plan Administrator from liability for his or her own gross negligence, fraud or willful misconduct as determined by Final Order of the Bankruptcy Court, except that: (a) the Plan Administrator shall be liable only for the performance of such duties and obligations as are set forth in the Plan or this Order; and (b) the Plan Administrator shall not be liable for any error of judgment made in good faith, or with respect to any action taken or omitted to be taken in good faith, unless the Plan Administrator was grossly negligent.

**D.    Rejection of Contracts/Leases; Rejection Damage Claim Bar Date**

9.    On the Effective Date, any and all agreements executed by the Debtor before the Effective Date, other than agreements that were previously either assumed and assigned or rejected either by a Final Order or under Bankruptcy Code section 365, to the extent that these agreements constitute executory contracts or unexpired leases under Bankruptcy Code section 365, shall be rejected.  For the avoidance of doubt, the lease agreement for the Mercedes CLS 550 is an executory contract and shall be rejected on the Effective Date.

10.    Any Rejection Damage Claims arising from rejection under the Plan of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served on the Plan Administrator and his or her counsel within thirty (30) days after the Effective Date.  Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable against the Debtor, the Estate, and the Plan Administrator, and their property, and the entities holding these Claims will be barred from receiving any distributions under the Plan on account of their Rejection Damage Claims.

**E.    Effects of Confirmation, Releases, Exculpation and Related Matters**

11.    <u>Exculpation of Plan/Case Participants</u>:  Pursuant to Article IX.A.1 of the Plan and this provision, pursuant to section 1125(e) of the Bankruptcy Code, (i) the Trustee, (ii) the Creditors' Committee, (iii) the members of the Creditors' Committee (solely in their capacities as such), (iv) the Debtor's Professionals as employed by the Debtor's Estate prior to the appointment of the Trustee, including, but not limited to, the Debtor's general insolvency counsel and financial advisor, (v) the Plan Administrator, (vi) the Oversight Committee, (vii) the members of the Oversight Committee (solely in their capacities as such), and (viii) the foregoing parties' respective Related Parties (collectively, the "<u>Plan/Case Participants</u>") will neither have nor incur any liability to any Person (including, without limitation, the Debtor and their Related Parties, Affiliates and Insiders) for any act taken or omitted to be taken on and after the Petition Date in connection with or directly or indirectly related to the Debtor, the Chapter 11 Case, any Assets, and any appeals of judgments or orders of the Bankruptcy Court during the Chapter 11 Case, including, but not limited to (1) the formulation, preparation, dissemination, negotiation,

implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement, pleading or document created, entered into or consented to by a Plan/Case Participant, (2) the pursuit of Causes of Action, (3) the administration of the Chapter 11 Case, (4) the management, operation, sale or other disposition or administration of the Debtor's assets and properties during the Chapter 11 Case, (5) any actions taken or omissions not taken in or relating to proceedings in state court, or (6) any other act taken or omitted to be taken in connection with the Plan, the Disclosure Statement, or the Confirmation Order, including solicitation of acceptances of the Plan, except only for actions or omissions to act to the extent determined by a Final Order of the Bankruptcy Court to be due to such Plan/Case Participant's own respective fraud, gross negligence or willful misconduct ("<u>Exculpated Conduct</u>"). Nothing herein shall be construed as a release of or waiver of any Claim that arose or is deemed to have arisen prior to the Petition Date against the Debtor by any party.

12. <u>Injunction Prohibiting Actions Against Plan/Case Participants</u>: Pursuant to Article IX.A.2 of the Plan and this provision, all Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any Plan/Case Participant, whether directly, derivatively, on account of or respecting any claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct. Any Plan/Case Participant injured by any willful violation of the injunctions provided in the Plan shall recover from the willful violator actual damages (including costs and attorneys' fees) and, in appropriate circumstances, punitive damages.

13. <u>Indemnification of Plan/Case Participants</u>: Pursuant to Article IX.A.3 of the Plan and this provision, from and after the Effective Date, the Plan/Case Participants shall be, and hereby are, indemnified by the Estate, to the fullest extent permissible by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees and defense costs and other assertions of liability directly or indirectly relating to the Exculpated Conduct. Subject to the terms hereof and Article IX.A.3 of the Plan, the Estate shall, on demand, advance or pay promptly out of Available Cash, on behalf of the applicable Plan/Case Participant, reasonable attorneys' fees and other expenses and disbursements which such Plan/Case Participant would be entitled to receive pursuant to the

foregoing indemnification obligation; provided, however, that any such Plan/Case Participant receiving any such advance shall execute a written undertaking to repay such advance amounts if the Bankruptcy Court ultimately determines by Final Order that such Plan/Case Participant is not entitled to indemnification hereunder due to the fraud, gross negligence or willful misconduct of such Plan/Case Participant.  The Plan Administrator is authorized, but not required, to obtain and purchase (by using Available Cash) insurance coverage, to the extent available, with respect to the Estate's indemnification obligations hereunder.  Any person entitled to indemnification hereunder shall have the right to employ such person's own separate counsel reasonably acceptable to the Plan Administrator in any such action, at the Estate's expense, subject to the terms and conditions of the Plan.  The indemnification provided for hereunder is separate from the indemnification obligations of the Estate set forth in Article VII.F of the Plan.  Notwithstanding anything in the Plan to the contrary, any and all indemnification provisions set forth in any orders of the Bankruptcy Court entered at any time in any of the Chapter 11 Case shall be expressly preserved and shall continue in full force and effect for the benefit of the parties indemnified under such provisions.

14. <u>Injunction Prohibiting Creditors' Actions Against the Estate and Related Assets</u>: Pursuant to Article IX.B of the Plan and this provision, in implementation of the Plan, except as otherwise expressly provided in this Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against the Estate that arose prior to the Effective Date are enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Plan Administrator, or any of his respective property (including the Assets which are property of the Estate); (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Estate, or the Plan Administrator, or any of their respective property (including the Assets that are property of the Estate) with respect to any such Claim; (c) creating, perfecting or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Estate, or the Plan Administrator, or any of their respective property (including the

Assets which are property of the Estate), with respect to any such Claim; (d) asserting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against any obligation due the Estate or any of their property with respect to any such Claim; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim; *provided that* the Plan Administrator may in his or her discretion except a third party from the foregoing injunction on such terms and conditions he determines appropriate without any court approval or notice.  Further, until the Plan Consummation Certification shall have been filed by the Plan Administrator, all Creditors are enjoined from commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtor with respect to the Excluded Assets.  Notwithstanding the foregoing, nothing contained in Article IX.B of the Plan shall enjoin or prohibit (1) the Holder of a timely-filed Proof of Claim from litigating its right to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, (2) the interpretation or enforcement by the Creditor of any of the obligations of the Debtor, the Estate or the Plan Administrator under the Plan, (3) lien holders from pursuing and enforcing the validity, priority or extent of their lien rights and the allowed amount of their Secured Claims, or (4) IFA from pursuing, before the Bankruptcy Court and within the time limit set forth in Section G below, its claims based upon alleged post-petition fraudulent transfers received by and for the benefit of the Debtor.  For the avoidance of doubt, and notwithstanding any other provision contained in the Plan or this Order, nothing in the Plan or this Order shall release any claims and/or causes of action, or enjoin any Person (including, without limitation, the Estate and/or the Plan Administrator) from commencing or continuing the prosecution of any claims and/or causes of action against any Person or entity other than pursuant to the express terms of Article IX of the Plan.

15. <u>Limitation of Liability for the Debtor Releasees</u>:  Pursuant to Article IX.E of the Plan and this provision, on the Effective Date, and subject to, and excluding any and all terms, conditions, obligations, representations and warranties imposed by, or set forth in the Plan, the Plan Administrator shall release the Debtor Releasees from any and all claims that the Estate has, or may have against them, and each of them (the "<u>Debtor Party Releases</u>").  The Debtor Party

Releasees are the Debtor, Kent Snyder, solely in his capacity as the Trust Protector of the Irrevocable Trust, and the following members of the Debtor's family: Marynn Blanchard, Gregory Brett Blanchard, Brent Douglas Blanchard, Ryan Randall Blanchard, Steven William Blanchard, Wendy Blanchard Evans, Victoria Brianne Blanchard, and William Randall Blanchard. Any and all claims asserted by any of the Debtor Releasees against the Estate shall be deemed released, withdrawn and discharged as of the Effective Date and said Releasees shall not recover anything pursuant to the Plan except as expressly set forth in the Plan. Notwithstanding the foregoing, the Debtor Releasees shall include the Car Wash Borrowers, but the Debtor Party Releases shall not release the Car Wash Borrowers from their obligations under the Modified Car Wash Notes. Further, notwithstanding the foregoing, the Debtor Party Releases shall not (i) affect, limit, discharge or release either the claimant's or the Estate's rights, remedies, obligations and defenses with respect to Proof of Claim No. 20 (asserted by GNC Express Partners, L.P.); or (ii) extend to any undisclosed Assets of the Debtor, and the Plan Administrator reserves all of the Estate's rights and remedies to pursue such Assets.

16. <u>Recourse</u>: Pursuant to Article X.H of the Plan and this provision, no Person entitled to receive a payment or Distribution under the Plan will have any recourse against the Trustee, the Creditors' Committee, the members of the Creditors' Committee (in their capacity as such), the Plan Administrator, the Oversight Committee or the members thereof and their respective Related Parties other than the right to receive Distributions in accordance with the terms of the Plan.

17. <u>Discharge</u>: Pursuant to Article IX.F of the Plan and this provision, Debtor shall not receive a discharge unless and until the Plan has been consummated such that the Plan Administrator has filed a notice and certification that all of the Debtor's payments and obligations under the Plan have been fully and completely performed (the "<u>Plan Consummation Certification</u>"). Thirty days prior to the Plan Administrator's filing of the Plan Consummation Certification, the Plan Administrator shall give notice to the Oversight Committee that the Plan Consummation Certification will be filed. Upon the Plan Administrator's filing of the Plan Consummation Certification, the Debtor shall be deemed to have received a discharge in the Chapter 11 Case pursuant to section 524 of the Bankruptcy Code. Any discharge entered in the

Case shall not discharge the Debtor from any debts that are nondischargeable under section 523 of the Bankruptcy Code or the obligations created by the Plan.

18.     <u>Retained Claims, Actions and Defenses</u>:  Unless a claim or Cause of Action against a person or entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order, the Plan Administrator, on behalf of the Estate, expressly reserves such claim or Cause of Action for later adjudication (including, without limitation, claims and Causes of Action which the Plan Administrator, the Trustee, the Debtor or the Creditors' Committee may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown at this time, or facts or circumstances which may change or be different from those now believed to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims or Causes of Action upon, or after, the Confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such claims or Causes of Action have been released in the Plan or other Final Order.

**F.     Retention of Jurisdiction**

19.     Notwithstanding the entry of this Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case after the Effective Date to the extent legally permissible, including, without limitation, as to the matters enumerated in Article X.N of the Plan.

**G.     Administrative Claim Bar Date**

20.     To be eligible to receive distributions under the Plan on account of an Administrative Claim (other than a Professional Fee Claim and statutory fees due to the United States Trustee, or as otherwise provided under Bankruptcy Code Section 503(b)(1)(D)) that is not otherwise allowed by the Plan, an Administrative Claim must be filed with the Bankruptcy Court so as to be received on or before the 30th day after the Effective Date, at 5:00 p.m. (Pacific Time) (the "<u>Administrative Claim Bar Date</u>"), or such other date as may be agreed to by the Plan Administrator.  Any Holder of an Administrative Claim that does not assert such Claim in

accordance with Article V of the Plan or other applicable Order of the Bankruptcy Court shall have its Administrative Claim be deemed Disallowed under the Plan and be forever barred from asserting such Claim against the Debtor, the Estate, or any of their assets or property.  Any such Claim shall be Disallowed and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

## H. Exemption from Transfer Taxes

21. Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the revesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument under the Plan is to be recorded shall, pursuant to this Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

## I. Termination of the Creditors' Committee

22. On the Effective Date, the Creditors' Committee shall cease to exist and its members, designated representatives and/or agents (including, without limitation, attorneys and other advisors and agents) shall, subject to those matters set forth below, be released and discharged from any further authority, duties, responsibilities and obligations relating to, arising from, or in connection with the Creditors' Committee.  The Creditors' Committee shall continue to exist after such date solely with respect to all the applications filed pursuant to sections 330 and 331 of the Bankruptcy Code seeking payment of fees and expenses incurred by any Professional.

## J. Quarterly Fees to the U.S. Trustee; Status Reports

23. All fees payable under 28 U.S.C. § 1930(a)(6) shall be paid by the Estate in the amounts and at the times such fees may become due up to and including the Effective Date.

Thereafter, the Plan Administrator shall file post-confirmation quarterly disbursement reports and pay from Cash on hand or the Plan Reserves all quarterly fees to the U.S. Trustee which are required by applicable law.  The Plan Administrator shall include in the reserve created for Plan Expenses reasonably sufficient monies to cover the quarterly fees of the U.S. Trustee incurred, or to be incurred, after the Effective Date.

**K.    Notice of Confirmation Order / Effective Date**

24.    As soon as practicable after the Effective Date, the Plan Proponent shall mail notice of the entry of this Order and of the occurrence of the Effective Date to all creditors and parties in interest previously served by the Plan Proponent with the Disclosure Statement Order and solicitation materials, which notice shall set forth the Administrative Claim Bar Date and the deadlines for filing Professional Fee claims and claims for rejection damages, identify the date that is the Effective Date, and provide such other information as may be appropriate to implement the Plan.  The foregoing notice shall constitute adequate and sufficient notice of the applicable deadlines and matters.

**L.    Construction of Order**

25.    The failure to reference a particular provision of the Plan in this Order shall not affect the validity or enforceability of such provision.  Each provision of the Plan shall be deemed authorized and approved by this Order and shall have the same binding effect of every other provision of the Plan, whether or not mentioned in this Order.  In the event of any inconsistencies between the Plan and this Order, this Order shall prevail.

**M.    No Stay**

The stay of this Confirmation Order imposed by Bankruptcy Rule 3020(e) is hereby waived in accordance with Bankruptcy Rule 3020(e).  Notwithstanding Bankruptcy Rule 3020(e) or any other Rule of the Federal Rules of Bankruptcy Procedure (including, without limitation, to the extent applicable, 6004(h) and 7062), upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Trustee, the Debtor, and any and all holders of Claims, all Entities that are parties to or subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, and any and

all non-Debtor parties to executory contracts and unexpired leases with the Debtor.

**N.    Post-Confirmation Requirements**

26.    On or before **March 31, 2016**, Plan Proponent shall file a status report (supported by competent evidence and complying with Local Bankruptcy Rule 3020-1(b)) explaining what progress has been made toward consummation of the Plan.  The initial report shall be served on the Post-Confirmation Service List, which is comprised of the Debtor and his bankruptcy counsel, the Oversight Committee and its counsel, the Office of the United States Trustee, Holders of Allowed and unpaid Administrative Claims, Priority Tax Claims, and Other Priority Claims, and any other party in interest in the Chapter 11 Case that specifically requests in writing that the Plan Administrator add such party's name to the list.  A post-confirmation status conference will be held on **April 14, 2016**, at 11:00 a.m.

# # #

Date: December 9, 2015

Scott C. Clarkson
United States Bankruptcy Judge

DOCS_LA:293781.1 68704/001                12