# FOR PUBLICATION

FILED & ENTERED

MAR 01 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY nbolte    DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – Santa Ana Division

| | |
|---|---|
| In re<br><br>RANDALL WILLIAM BLANCHARD,<br><br>    Debtor. | Case No. 8:14-bk-14105-SC<br><br>Chapter 11<br><br>**ORDER AND MEMORANDUM DECISION DENYING APPLICATION FOR ADMINISTRATIVE CLAIM**<br><br>Date: 2/4/2016<br>Time: 11:00 a.m.<br>Ronald Reagan Federal Building &<br>U.S. Courthouse<br>Courtroom 5C<br>411 West Fourth Street<br>Santa Ana, CA 92701 |

      Before the Court is the "Application for Payment of Postpetition/Administrative Claim" ("Application") [Dk. 649][1] filed by Integrated Financial Associates, Inc. ("IFA"), which came on for hearing on February 4, 2016. Jeremy Richards, Esq. of Pachulski, Stang, Ziehl & Jones LLP appeared on behalf of the Chapter 11 Trustee/Plan Administrator Richard M. Pachulski ("Trustee"). Candace Carlyon, Esq. of Morris Polich & Purdy, LLP appeared on behalf of IFA.  Other appearances, if any, were as noted on the record.

---

[1] Unless otherwise indicated, references to "[Dk. X]" refer to the docket in this bankruptcy case.

Based upon the Application, the declarations of Candace Carlyon, Esq. ("Carlyon Declaration") [Dk. 651] and William Dyer ("Dyer Declaration") [Dk. 650]; IFA's appendix of exhibits ("Appendix") [Dk. 652]; the Trustee's opposition ("Opposition") [Dk. 662]; the Trustee's evidentiary objections ("Evidentiary Objections") [Dk. 661]; IFA's reply ("Reply") [Dk. 692]; and IFA's response ("Response") [Dk. 691] to the Evidentiary Objections, and for the reasons set forth on the record and as set forth in detail below, the Application is DENIED. The Evidentiary Objections are SUSTAINED.

## I.      Introduction

This is not a typical administrative claim. Usually, an administrative claim involves vendors or creditors adding post-petition value to the reorganization efforts of a debtor's business. In those cases, the issues generally relate to the type of value afforded, the benefits derived from such contribution of value, the motives of the provider, and the like. In this case, however, we encounter an administrative claim arising from an alleged fraudulent transfer to the debtor. More particularly, the claimant asserts that the debtor received a fraudulent transfer from a non-debtor entity while the claimant was a creditor of that non-debtor entity.

## II.      Background[2]

The basis for IFA's Application stems from an agreement ("Victorville Agreement") [Appendix 1] entered into on or about November 28, 2008, between and among Sandcastle Nuevo, LLC ("SCN"), SCV, and IFA. The Victorville Agreement provides, in pertinent part, that SCV deliver to Kent G. Snyder, Esq. ("Snyder") an unrecorded deed of trust ("SCV Deed of Trust") related to the real property located at 14374 Borego Road, Victorville, CA 92392 ("Victorville Property"). The SCV Deed of Trust was to be recorded only upon the occurrence of certain conditions precedent. The debtor, Randall William Blanchard ("Blanchard"), was not a party to the Victorville

---

[2] The background of this proceeding is extensive, and the Court incorporates by reference the procedural history set forth in the Order Dismissing Adversary Proceeding entered on January 22, 2016 [8:15-ap-01394-SC Adv. Dk. 62].

Agreement; however, the recitals reflect that the SCV Deed of Trust was intended to provide additional security for a $1.7 million note ("SCN Note") made by SCN in favor of IFA and to "forestall IFA's potential suit" on Blanchard's guaranty of the SCN Note. [Appendix 1, page 1].

Blanchard filed an individual chapter 11 bankruptcy on July 1, 2014 ("Petition Date"). On July 25, 2014, shortly after the Petition Date, IFA alleges that Blanchard caused[3] SCV to transfer $555,123.53 to his debtor-in-possession account and $393,796.47 to California Republic Bank ("CRB") in payment of a debt Blanchard owed to CRB (together "Transfers").

Richard M. Pachulski was appointed as chapter 11 trustee on January 12, 2015. Order [Dk. 262]. The Trustee's Fifth Amended Plan of Reorganization ("Plan") [Dk. 598] was confirmed, as amended, on December 9, 2015, with the Trustee acting as the plan administrator. Confirmation Order [Dk. 637].

IFA filed its Application on January 4, 2016. The Application asserts that the Transfers were fraudulent under the California Uniform Fraudulent Transfer Act ("CUFTA"),[4] that IFA was a creditor of SCV at the time of the Transfers and that Blanchard was the initial transferee of the Transfers. The Trustee opposes the Application, asserting, among other things, that IFA lacks standing under CUFTA because IFA was not a creditor of SCV at the time of the Transfers.

### III.    Discussion

For the reasons set forth below, the Court finds that IFA has failed to meet its burden to establish a *prima facie* administrative claim against the estate. The Court also finds that even if IFA had established a *prima facie* administrative claim, it has failed to

---

3 IFA alleges that Blanchard ultimately controlled SCV through other non-debtor entities and thereby "caused" SCV to make the Transfers. Specifically, IFA alleges that SCV is managed by its sole member and manager, Folkstone Partners, LP ("Folkstone") [Application ¶24]; Meryton management, Inc. ("Meryton") is the general partner of Folkstone [Application ¶25]; Meryton owns 1% of Folkstone [Application ¶26]; Meryton is wholly-owned by Blanchard [Application ¶27]; Blanchard is the CEO of Meryton [Application ¶28]; and Blanchard also owns 99% of Folkstone [Application ¶29].

4 The California Uniform Fraudulent Transfer Act has been renamed the California Voidable Transactions Act as of January 1, 2016. *See* Cal. Civ. Code § 3439.

meet its burden to prove that it was a creditor of SCV at the time of the Transfers.

Because IFA was not a creditor at the time of the Transfers, IFA has not proven that it

was injured by the Transfers. Therefore, IFA lacks standing to assert a fraudulent

transfer cause of action against Blanchard under CUFTA. Finally, assuming *arguendo*

that IFA had standing under CUFTA, it has failed to prove other requisite elements of its

claim under CUFTA.

### A.    Administrative Claims

Section 503(b)(1)(A) provides for administrative expenses, "including the actual,

necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1)(A). The

terms "actual" and "necessary" as used in § 503(b)(1)(A) are construed narrowly.

*Burlington N.R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700,

706 (9th Cir. 1988) (citations omitted). This narrow construction implements a

presumption that a bankruptcy estate has limited resources which should be equally

distributed among creditors. *Boeing N. Am., Inc. v. Ybarra (In re Ybarra)*, 424 F.3d

1018, 1026 (9th Cir. 2005). Bankruptcy courts have broad discretion in deciding

whether to allow an administrative expense. *Microsoft Corp. v. DAK Indus. (In re DAK

Indus.)*, 66 F.3d 1091, 1094 (9th Cir. 1995); *In re Dant & Russell, Inc.*, 853 F.2d at 706.

The purpose of administrative priority status is to encourage third parties to do business

with the bankruptcy estate for the benefit of the estate as a whole. *Boeing N. Am., Inc. v.

Ybarra (In re Ybarra)*, 424 F.3d 1018, 1026 (9th Cir. 2005) (citations omitted).

The claimant has the burden of proving by a preponderance of evidence that it

has an administrative expense claim. *See In re CWS Enterprises, Inc.*, No. BAP EC-14-

1195, 2015 WL 3651541, at *4 (B.A.P. 9th Cir. June 12, 2015) (unpublished). Unlike

general unsecured proofs of claims, administrative claims lack presumptive validity. *In

re Saxton, Inc.*, No. BAP NV-06-1354-ESD, 2007 WL 7540972, at *7 n. 12 (B.A.P. 9th

Cir. July 30, 2007) (unpublished). An administrative claimant bears the initial burden

of establishing that its claim "(1) arose from a transaction with the debtor-in-possession

as opposed to the preceding entity (or, alternatively, that the claimant gave

consideration to the debtor-in-possession); and (2) directly and substantially benefitted the estate." *In re DAK Indus., Inc.*, 66 F.3d 1091, 1094 (9th Cir. 1995).

### Analysis

IFA has not met its burden to establish a *prima facie* administrative claim. IFA has not cited any authority in support of its contention that where an individual chapter 11 debtor is the initial transferee of an allegedly fraudulent post-petition transfer, the transfer constitutes an actual and necessary cost of preserving the estate under § 503(b)(1)(A). The Court's own research indicates that there is a "venerable but limited exception" to the post-petition transaction-for-the-benefit-of-the-estate requirement under § 503(b)(1)(A). *See In re Abercrombie*, 139 F.3d 755, 758 (9th Cir. 1998) (citing *Reading v. Brown*, 391 U.S. 471 (1968)). The so-called *Reading* exception provides that a post-petition tort committed by the debtor-in-possession within the course and scope of its continued operation of the estate's business may, itself, be considered a cost of doing business and is, therefore, entitled to administrative expense priority under § 503(b)(1)(A).[5]

IFA has failed to show that the Transfers are an "actual, necessary cost and expense of preserving the estate." IFA has failed to even analyze whether the Transfers come within the *Reading* exception for post-petition torts incident to the debtor-in-possession's business operations.

A fraudulent transfer cause of action does not "sound in tort"; it is quasi-contractual in nature. *See, e.g.*, *United States v. Neidorf*, 522 F.2d 916, 918-20 (9th Cir. 1975) (finding that claim for recovery of fraudulent transfer was quasi-contractual and not a tort for purposes of determining the applicable statute of limitations under 28 U.S.C. § 2415); *In re Century City Doctors Hosp.*, LLC, 466 B.R. 1, 9 (Bankr. C.D. Cal. 2012) (noting that fraudulent transfer actions are not founded upon tort for contractual

---

[5] The *Reading* exception avoids a moral hazard. *See* Kenneth N. Klee, BANKRUPTCY AND THE SUPREME COURT, pg. 304 (LexisNexis, 2008) ("Although most of these expenses involve actual benefit to the estate, in order to avoid a moral hazard, the category also includes postpetition tort claims against the representative of the estate.").

choice of law provision purposes) (citing cases in other contexts). IFA has not provided (and the Court is unaware of) any authority which expands the *Reading* exception to encompass fraudulent transfers or other quasi-contractual remedies. Also, IFA has failed to establish that Blanchard (an individual chapter 11 debtor) was acting within the course and scope of his fiduciary capacity to the estate as a debtor-in-possession.

IFA has not established a *prima facie* administrative claim, but even if it had, the Application must be denied as a matter of law for the reasons set forth below.

### B.    Standing

A plaintiff must make an affirmative showing that it was injured by a transfer in order to have statutory standing to pursue a fraudulent transfer claim under CUFTA. *See, e.g.*, *Isaka Investments, Ltd. v. Reserva*, LLC, No. B245650, 2014 WL 255701, at *13 (Cal. Ct. App. Jan. 23, 2014), reh'g denied (Feb. 24, 2014), review denied (Apr. 9, 2014) (unpublished) ("Without a 'right to payment' against the transferor, Plaintiffs have no standing to pursue a fraudulent transfer claim."); *see also In re Paradigm Int'l*, Inc., No. 13-56517, 2015 WL 8949762, at *1 (9th Cir. Dec. 16, 2015) (holding that the burden of proof under CUFTA is on the party asserting the fraudulent transfer action) (citing *Whitehouse v. Six Corp.*, 40 Cal. App. 4th 527, 533-34 (1995)).

CUFTA provides that "[a] transfer made or obligation incurred by a debtor is voidable *as to a creditor*. . . ." Cal. Civ. Code § 3439.04(a) (emphasis added).  A "creditor" is defined as one who "has a claim." Cal. Civ. Code § 3439.01(c). A "claim" is defined as a "*right to payment*, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Cal. Civ. Code § 3439.01(b) (emphasis added).

The parties dispute whether IFA was entitled to a "right to payment" from SCV at the time of the Transfers. In other words, the parties dispute whether IFA has standing under CUFTA as a "creditor" of SCV at the time of the Transfers. IFA has posited several arguments as to why it was a "creditor" under CUFTA; none are persuasive.

**1.  IFA's First Argument: The Default Judgment is Preclusive**

IFA's first argument is that it is a creditor under CUFTA because it sued SCV in Nevada state court (District Court of Clark County, Nevada Case No. A-15-719341-B ("Nevada Action") filed June 3, 2015) and obtained a default judgment [Appendix 8, Dk. 652-1] ("Default Judgment") for $2.117 million against SCV. IFA asserts that the Default Judgment conclusively establishes that IFA is a creditor of SCV and that it is preclusive against the estate—a nonparty to the Nevada Action. The Court disagrees.

IFA concedes that the Default Judgment lacks issue preclusive effect under *In re Sandoval*, 126 Nev. 136 (2010).  However, IFA asserts that claim preclusion applies. Even under claim preclusion, however, IFA's burden is not met.

**Claim Preclusion**

Nevada law provides the following elements for claim preclusion:

> (1) the final judgment is valid, (2) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case, and (3) the parties or their privies are the same in the instant lawsuit as they were in the previous lawsuit, or the defendant can demonstrate that he or she should have been included as a defendant in the earlier suit and the plaintiff fails to provide a "good reason" for not having done so.

*Weddell v. Sharp*, 131 Nev. Adv. Op. 28 (2015), reh'g denied (July 23, 2015) (citations and alterations omitted). The party asserting preclusion has the burden of proving the preclusive effect of the judgment. *Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 470, 481 (2009) *holding modified on other grounds by Garcia v. Prudential Ins. Co. of Am.*, 129 Nev. Adv. Op. 3 (2013).

Assuming *arguendo* the Default Judgment is valid and that the claims are identical, IFA has failed to prove privity between SCV and the estate or the Trustee.

**Privity**

Nevada law recognizes privity where a person "acquired an interest in the subject matter affected by the judgment through . . . one of the parties as by inheritance, succession, or purchase." *Weddell v. Sharp*, 350 P.3d 80, 82 (Nev., 2015) (citing *Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 470, 481 (2009); *Paradise Palms Cmty. Ass'n v.*

*Paradise Homes*, 89 Nev. 27, 31 (1973)). Nevada law defines a "privy" as one "who is directly interested in the subject matter, and had a right to make defense, or to control the proceeding, and to appeal from the judgment." *Paradise Palms Cmty. Ass'n v. Paradise Homes*, 505 P.2d 596, 599 (Nev., 1973) (citing Restatement (Second) of Judgments § 41(1) (1982)). Finally, Nevada law recognizes privity where a person is "adequately represented" in the prior action. *Id.* (citing *Alcantara ex rel. Alcantara v. Wal-Mart Stores, Inc.*, 321 P.3d 912, 917 (Nev., 2014); Restatement (Second) of Judgments § 41(1) (1982)).

SCV did not adequately represent the Trustee or the estate in the Nevada Action. *See Alcantara ex rel. Alcantara v. Wal-Mart Stores, Inc.*, 321 P.3d at 917. The Trustee was not "directly interested in the subject matter" and had no "right to make defense, or to control the proceeding," much less any right to "appeal from the judgment." Moreover, IFA has not proven that the Trustee or the estate "acquired an interest in the subject matter affected by the judgment" by succession or otherwise.

IFA cites *In re Gottheiner* for the proposition that:

> Privity exists when there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest. When a person owns most or all of the shares in a corporation and controls the affairs of the corporation, it is presumed that in any litigation involving that corporation the individual has sufficient commonality of interest. As this court has stated before, the public policies underlying the doctrine of collateral estoppel, "as a bar to repetitious litigation, would support a finding of privity between a close corporation and its sole or controlling stockholder."

Reply [Dk. 692, page 9, lines 8-18] (citing *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983)).

IFA has not shown "substantial identity" or commonality of interest between the estate or the Trustee and SCV.  Notably, *Gottheiner* did not apply Nevada preclusion law. Nevada has adopted the privity analysis set forth in the Restatement (Second) of Judgments ("Restatement") § 41, which provides that "[a] person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party." *Alcantara*, 321 P.3d at 917 (citing Restatement

(Second) of Judgments § 41(1) (1982)). Under Restatement § 41, a person is "represented" by a party who is, *inter alia*, a trustee, agent, executor, administrator, guardian, conservator, or similar fiduciary manager of an interest of which the person is a beneficiary. SCV is not an agent or fiduciary of the Trustee or the estate, and SCV did not adequately represent the estate.

Restatement § 42 provides exceptions to the privity examples listed in § 41. The Ninth Circuit has recently predicted that Nevada would follow Restatement § 42. *See Arduini v. Hart*, 774 F.3d 622, 636 n. 13 (9th Cir. 2014) ("The Nevada Supreme Court, in discussing and adopting § 41, noted the court's 'long-standing reliance on the Restatement (Second) of Judgments in the issue and claim preclusion context.' *Alcantara*, 321 P.3d at 917. Thus it appears likely that Nevada would follow § 42 as well."). Restatement § 42 provides, in pertinent part, that "A person is not bound by a judgment for or against a party who purports to represent him if: . . . The representative failed to prosecute or defend the action with due diligence and reasonable prudence, and the opposing party was on notice of facts making that failure apparent." Restatement (Second) of Judgments § 42(1)(e) (1982).

This privity exception applies. IFA was put on notice of facts making it apparent that SCV would have no incentive to defend the Nevada Action, as it had no assets and indicated it was unlikely to defend the action. *See* Application page 13, lines 22-27 (IFA acknowledges that it knew SCV had no assets). On April 2, 2015, counsel to SCV, Jacob Gonzales, Esq., advised the court that SCV would probably not defend a lawsuit by IFA against SCV:

| | |
|---|---|
| Mr. Gonzales: | It's still an active entity, Your Honor, but it has no assets. |
| The Court: | Okay. What are the chances of [SCV] responding to this compliant? |
| Mr. Gonzales: | Not high, Your Honor. |
| The Court: | Okay. You might win on default. |

Transcript 4/2/2016 [8:14-ap-01242-SC Adv. Dk. 108, page 28, lines 11-16]. IFA's counsel, Ms. Carlyon, was physically present in the courtroom during this above-quoted

colloquy, and was made aware of facts making it apparent that SCV had no incentive to defend the Nevada Action. SCV did not, in fact, defend the Nevada Action. Under these circumstances, even if there were privity (which the Court finds there is not), Restatement § 42(1)(2) provides that neither the estate nor the Trustee is bound by the Default Judgment.

Finally, the Court is mindful that CUFTA does not even require a judgment to establish a right to payment.[6] The entire exercise by IFA in obtaining the Default Judgment against SCV appears to be superfluous at best and at worst a bad faith, tactical effort to avoid an adjudication on the merits.[7]

The Default Judgment is not preclusive against the Trustee or the estate.

## 2.  <u>IFA's Second Argument</u>: SCV Breached the Victorville Agreement Resulting in Right to Payment from SCV to IFA

IFA asserts that as a result of SCV's alleged breach of the Victorville Agreement IFA became entitled to a "right to payment," as defined under CUFTA, from SCV.  In particular, IFA alleges that on November 29, 2012, an escrow was opened for the sale of the Victorville Property [Application, ¶8]; that SCV failed to provide three business days' notice to IFA (or to Snyder until after the sale) [Application, ¶¶9,10]; that Snyder never recorded the SCV Deed of Trust [Application ¶11]; that "as a . . . result, IFA was unable to place a demand in escrow for payment" [Application ¶12]; that on February 28, 2013, SCV sold the Victorville Property to 14374 Borego Road LLC ("Borego Road") [Application, ¶13]; and that "IFA has never been [sic] received any money related to the Victorville Agreement, and the balance currently due to IFA is $2,117,000.00" [Application ¶33].

---

[6] Prior law in existence in California 75 years ago required a creditor to have a judgment against the transferor (or a lien on the property transferred) in order to have standing to avoid the transfer. *See, e.g.*, *Moore v. Schneider*, 196 Cal. 380, 387 (1925) (citing Cal. Civ. Code § 3441, repealed in 1934). That is no longer the case. A "claim" is defined under CUFTA as a "right to payment, *whether or not the right is reduced to judgment*. . . ." Cal. Civ. Code § 3439.01(b) (emphasis added).

[7] As set forth in the Order Dismissing Adversary Complaint [8:15-ap-01394-SC Adv. Dk. 62, page 8, line 11 – page 9, line 3], contrary to IFA's previous assertions, the Court never directed IFA to obtain a default judgment.

Section 3 of the Victorville Agreement provides, in pertinent part, that "SCV shall provide IFA with notice within three (3) business days of opening of an escrow for the sale or refinance of the [Victorville Property] and shall allow IFA to place a demand into escrow for the value of the [SCN Note]. . . ." [Appendix 1, §3]. However, Section 2.3 of the Victorville Agreement creates conditions precedent to the recordation of the SCV Deed of Trust. Section 2.3 provides:

> 2.3    SCV Deed of Trust Recording. Provided that SCV is not in default under the terms of any of the obligations set forth in Paragraph 2.1(a) above [dealing with lien priorities], and *until there is an escrow opened for the sale of the Premises and said escrow has released deposits to SCV nonrefundable under any circumstances, other than SCV's default, then and only then shall Snyder release the SCV Deed of Trust for recordation.* . . .

Victorville Agreement [Appendix 1, page 2] (emphasis added). IFA asserts that escrow was opened on November 29, 2012. The parties dispute whether "deposits . . . nonrefundable under any circumstances" were released to SCV.

IFA asserts that the reference in the Closing Statement to a "Security Deposit" of $106,367.25, which appears in a column reflecting "Prorations/Adjustments," is proof that nonrefundable deposits were released to SCV. *See* Closing Statement [Appendix 2]. In rebuttal, the Trustee correctly points out that the Closing Statement's reference to a "Security Deposit" does not establish any release of deposits to SCV, nonrefundable or otherwise. Indeed, the Closing Statement does not identify to whom the "Security Deposit" $106,367.25 was paid; it does not establish or even suggest that the release of nonrefundable deposits to SCV ever occurred. IFA also points to the escrow instructions attached to the Closing Statement, which indicate that the escrow agent was authorized to release seller's deposits; however, as noted by Mr. Richards during oral argument, those escrow instructions were not operative at closing.[8] Moreover, escrow instructions are not probative to whether nonrefundable deposits were, in fact, released to SCV.

---

[8] Indeed, the escrow instructions at Appendix 2 reflect a different sale price of $19.3 million (not $19 million, as reflected in the Closing Statement) and they are dated as of November 29, 2012, several months before the February 28, 2013 closing.

Even if the SCV Deed of Trust were recorded, IFA would have been significantly undersecured and subordinated to the payment of other senior lienholders on the Victorville Property, as noted in Section 2.1 of the Victorville Agreement. While it is unclear whether other lienholders (senior to IFA) were paid prior to the closing, it is not disputed that Dexia Real Estate Capital Markets' ("Dexia") agreed to a $2 million reduction in its note to allow the sale of the Victorville Property to close. IFA provided insufficient evidence that it would have received consideration from the sale even if the SCV Deed of Trust had been recorded.

IFA has not met its burden to prove that SCV's alleged breach of the Victorville Agreement gave rise to a "right to payment," as that term is defined under California law. As a result, IFA has failed to prove standing under CUFTA. *See Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 80 (2001) ("A transfer in fraud of creditors may be attacked only by one who is injured thereby. Mere intent to delay or defraud is not sufficient; injury to the creditor must be shown affirmatively. In other words, prejudice to the plaintiff is essential. It cannot be said that a creditor has been injured unless the transfer puts beyond [its] reach property [it] otherwise would be able to subject to the payment of [its] debt.").

### 3.  <u>IFA's Third Argument</u>: SCV Breached the Implied Covenant of Good Faith and Fair Dealing

IFA's third argument is that even if SCV incurred no liability to IFA under the literal terms of the Victorville Agreement, SCV breached the implied covenant of good faith and fair dealing under Nevada law. IFA cites *Hilton Hotels Corp. v. Butch Lewis Productions*, which provides that "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 234 (1991). "[G]ood faith . . . is a question of fact to be determined by the [fact-finder] after presentation of all relevant evidence." *Id.* at 233.

Here, the Court finds that IFA has not provided sufficient evidence that SCV acted in bad faith or that SCV performed in a manner unfaithful to the purpose of the contract.  IFA flatly states that "[t]he purpose of the [Victorville] Agreement was to ensure payment to IFA from the proceeds of the sale of the [Victorville Property]." Application [Dk. 649, page 13, lines 2-3]. The Court disagrees with this characterization. The Victorville Agreement does not provide an express purpose, but the recitals reflect that the parties intended to provide additional security for payment of the SCN Note[9] and to forestall suit on Blanchard's guaranty of the SCN Note, subject to certain terms and conditions.[10]

IFA has not presented any evidence of lack of good faith on the part of SCV. As discussed above, a condition precedent did not occur, and IFA has not adequately addressed this point.

### 4.    IFA's Fourth Argument: IFA's Claim Arose When IFA Entered Into the Victorville Agreement

Although it is not well-pled, IFA suggests that it held a "contingent claim" against SCV as of the date IFA entered into the Victorville Agreement. Application, page 13, line 11. In support, IFA cites *In re Huffy Corp.*, 424 B.R. 295, 301 (Bankr. S.D. Ohio 2010) and *In re Greater Se. Cmty. Hosp. Corp. I*, 365 B.R. 293, 315 n. 42 (Bankr. D.D.C. 2006). Neither case deals with California Civil Code § 3439.01(b)'s definition of "claim," and neither case deals with a situation where a contingency fails to ripen and is eliminated by the non-occurrence of a condition precedent.

As noted above, a condition precedent to Snyder releasing the SCV Deed of Trust for recordation never occurred. Assuming *arguendo* that IFA had a contingent right to

---

[9] In addition to Blanchard's guaranty, the Victorville Agreement's recitals also reflect that the SCN Note was additionally secured by a separate deed of trust.

[10] The Victorville Agreement's recitals reflect that "in order to secure the Note and the [sic] forestall IFA's potential suit on the independent guaranty of Blanchard, SCV has agreed to provide IFA with a deed of trust securing additional collateral located in Victorville, California owned by SCV, subject to certain terms and conditions set forth below." Victorville Agreement [Appendix 1, page 1]. The Court notes that Blanchard's guaranty of the SCN Note was settled and released a year prior to the sale of the Victorville Property.

payment from SCV as of the date of the Victorville Agreement, once the Victorville Property was sold to Borego Road, any purported "contingency" failed to ripen and was eliminated as to SCV. Therefore, any purported contingent claim by IFA against SCV was extinguished well before the date of the Transfers. As a result, any allegedly fraudulent transfer could not have injured IFA. Injury is, of course, required under CUFTA. *See Fid. Nat. Title Ins. Co. v. Schroeder*, 179 Cal. App. 4th 834, 841 (2009) (noting that an injury-in-fact is an essential element for a claim under CUFTA).

## C.    Other CUFTA Elements

Even if IFA had statutory standing as a creditor, it has failed to provide sufficient evidence to meet other elements of its CUFTA claims, including actual fraud or insolvency. Constructive fraud requires, *inter alia*, proof that "the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Cal. Civ. Code § 3439.05; *Mejia v. Reed*, 31 Cal. 4th 657, 670 (2003).  The initial burden of proof regarding insolvency is on the party challenging the transfer. *See In re Beachport Entm't*, 252 F. App'x 130, 132 (9th Cir. 2007) (unpublished) (citing Cal. Civ. Code § 3439.05; *Mejia v. Reed*, 74 P.3d 166, 174-75 (2003) (placing burden of proof on party challenging the transfer); *In re Curry & Sorensen, Inc.*, 112 B.R. 324, 328 (9th Cir. BAP 1990) (same)).

IFA has failed to meet its initial burden to prove insolvency. IFA's only purported evidence of SCV's insolvency is that "counsel for SCV admitted that SCV *has* no assets." Application [Dk. 649, page 13, line 22] (emphasis added). SCV's counsel's statement referred to the status of SCV *as of the April 2, 2015 hearing*. This statement is not probative to SCV's alleged insolvency *as of July 25, 2014*, the date of the Transfers.

Under the CUFTA, a transfer is intentionally fraudulent if it is made with the intent to defeat, hinder, or delay creditors. IFA has the burden to "establish by a preponderance of the evidence the existence of the requisite state of mind." *In re Ezra*, 537 B.R. 924, 930 (B.A.P. 9th Cir. 2015) (citing *In re Beverly*, 374 B.R. 221, 235 (B.A.P.

9th Cir. 2007) aff'd in part, dismissed in part, 551 F.3d 1092 (9th Cir. 2008)).  A non-exhaustive list of 11 "badges of fraud" is set forth in California Civil Code § 3439.04(b).

The sum of IFA's argument concerning actual fraud by Blanchard consists of the following five lines of conclusory statements contained in IFA's Application:

> [T]he transfer was for the benefit of an insider (b)(1); the transfer was part of an overall scheme to defraud IFA, all of which, from the sale of the Victorville Property to the post-petition transfers to Blanchard and to CRB for Blanchard's account, were concealed from IFA (b)(2); the two simultaneous transfers constituted all of [SCV's] remaining assets (b)(5); and [SCV] was insolvent prior and subsequent to the transfer (b)(6).

Application page 14, lines 5-10. No further analysis is provided by IFA. Even assuming that the Transfers were for the benefit of an insider, IFA provided no analysis or specific evidence to support its assertions that the Transfers were part of a "scheme to defraud IFA," that Blanchard otherwise "concealed from IFA" the Transfers, that the Transfers "constituted all of [SCV's] remaining assets," or that SCV was insolvent "prior and subsequent to the transfer." It was IFA's burden to prove fraudulent intent; however, IFA's conclusory recitation of certain "badges of fraud," without more, is insufficient to meet that burden.

## D.    Evidentiary Objections

The Trustee filed Evidentiary Objections [Dk. 661] to the admittance of IFA's Appendix 7 [Dk. 652], which purport to be balance sheets of Folkstone Partners, LLP ("Folkstone") over a five-year period. IFA proffered these unaudited balance sheets for the purpose of proving that SCV was not indebted to Folkstone as of December 31, 2010 through December 31, 2014. The Evidentiary Objections raise three bases for excluding the balance sheets: (1) lack of foundation under Federal Rule of Evidence ("FRE") 602; (2) hearsay under FRE 801-802; and (3) failure to authenticate under FRE 901. The Court agrees with these Evidentiary Objections. IFA's Response does not address the lack of foundation objection. The Response does posit three arguments related to the hearsay and authentication objections. Specifically, IFA argues that the balance sheets (1) were "produced by a party during discovery"; (2) are non-hearsay, party-opponent

admissions under FRE 801(d)(2); and (3) are admissible under FRE 807, the federal

residual exception. None of these arguments are availing.

The first two arguments are disposed of by Ms. Carlyon's own declaration. Ms.

Carlyon states in her declaration that "Appendix Exhibit 7 consists of true and correct

copies of Folkstone Partners, LLP's Balance Sheets as produced *by Folkstone and its*

*attorney* on September 3, 2015 in response to discovery served by IFA in this matter."

Carlyon Declaration ¶5 (emphasis added). The Court observes that neither Folkstone

nor its attorney are parties to this administrative claim proceeding. IFA has not shown

why the balance sheets, which were not "produced *by a party* during discovery," should

come within the hearsay exception for "*party*-opponent admissions" under FRE

801(d)(2). The Court recognizes that IFA sued Folkstone and others twice previously,

and the Court dismissed both those complaints without leave to amend.

IFA argues that because the Trustee is a successor in interest to Blanchard, and

because Blanchard was the managing member of Folkstone, the balance sheets

submitted by Folkstone's counsel are non-hearsay, party-opponent admissions. The

Court disagrees. Again, Folkstone is not a party to this administrative claim proceeding.

Moreover, Folkstone was not an "agent" of the Trustee, and therefore, the cases cited by

IFA—*Tracinda* and *Sherif*—are inapposite.[11]

To the extent that IFA argues that the Trustee's relationship to Folkstone renders

statements by Folkstone admissions of the Trustee, the Court disagrees. Assuming that

the Trustee succeeded to the estate of Blanchard and that Blanchard was a managing

---

[11] IFA cites *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 504 (D. Del. 2005) and *Sherif v. AstraZeneca*, No. CIV.A. 00-3285, 2002 WL 32350023, at *2 (E.D. Pa. May 9, 2002) for the proposition that "the relationship between the Trustee and Blanchard renders the balance sheets to be admissible as party admissions," and that "as the [Trustee] is the successor in interest to the Debtor such statements are admissible as party admissions." *Tracinda* and *Sherif* stand for the proposition that out-of-court statements made by an agent of a subsidiary offered against the parent company in a suit arising from allegedly unlawful activities of the subsidiary prior to a merger are not hearsay. *See United States v. Cinergy Corp.*, No. 1:99-CV-1693-LJM-JMS, 2009 WL 6327419, at *2 (S.D. Ind. Apr. 24, 2009) (noting the holdings of *Tracinda* and *Sherif*). Of course, FRE 801(d)(2) itself expressly provides that statements offered against an opposing party and made by an agent on a matter within the scope and duration of the agency relationship are not hearsay.

member of Folkstone, that does not make Folkstone a "party-opponent" nor does it make statements by Folkstone or Folkstone's counsel imputed admissions by the Trustee based upon the Trustee's "relationship" to Blanchard.[12]  The balance sheets are unauthenticated. They are unaudited. They are being offered by IFA for the truth of the matter asserted—that Folkstone never owed SCV. They are inadmissible hearsay.

Rule 807, the federal residual exception to the hearsay rule, is equally unavailing. The residual exception is to "be used very rarely, and only in exceptional circumstances." Wright & Miller, Federal Practice and Procedure § 7095 (2000).

The balance sheets lack equivalent circumstantial guarantees of trustworthiness. *See, e.g., In re Mbunda*, 604 F. App'x 552, 555 (9th Cir.) *cert. denied sub nom. Van Zandt v. Mbunda*, 136 S. Ct. 198 (2015) (citing *United States v. Sanchez–Lima*, 161 F.3d 545, 547 (9th Cir. 1998)). The balance sheets are not even material to IFA's claim, or even probative to the question of whether an obligation to Folkstone existed as of the date of the sale of the Victorville Property.  Assuming *arguendo* that the balance sheets were prepared by an agent of Folkstone, the absence of an entry on the balance sheets does not necessarily prove the absence of an obligation owed by SCV to Folkstone. The balance sheets are all dated as of year-end. IFA could have employed other reasonable efforts such as discovery or subpoenaing testimony to verify the existence or non-existence of an obligation to Folkstone. IFA could have cross-examined declarants with personal knowledge of the obligation. IFA has not shown that admitting the balance sheets will best serve the purposes of the rules of evidence and the interests of justice. The residual exception is not met. IFA did not provide any other basis for authentication, such as testimony of a custodian of records, to authenticate or provide a foundation for admitting the balance sheets.

---

[12] The concept of party opponent admissions based upon privity has been abolished since the Federal Rules of Evidence were adopted. *Kesey, LLC v. Francis*, No. CV. 06-540-AC, 2009 WL 909530, at *18 (D. Or. Apr. 3, 2009) opinion adopted, No. CIV. 06-540-AC, 2009 WL 1270249 (D. Or. May 5, 2009) *aff'd*, 433 F. App'x 565 (9th Cir. 2011).

**E.    IFA's Request for Discovery**

In the very last minute of the February 4, 2016 hearing, after the Court had given its analysis of the administrative claim proceeding, IFA's counsel, Ms. Carlyon, announced that "if there's a question of fact, I would ask that the Court, this being a contested matter, permit formal discovery to be conducted." Transcript 2/4/2016 12:43 p.m. The Court denied this last-minute request.

"Decisions regarding continuances and discovery are reviewed for abuse of discretion." *In re Khachikyan*, 335 B.R. 121, 125 (B.A.P. 9th Cir. 2005) (citing *Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1009 (9th Cir. 2004); *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002)).

Here, Ms. Carlyon has had over a year and a half to conduct discovery related to the facts that form the basis of her assertion of an administrative claim. Ms. Carolyn did, in fact, conduct discovery, as set forth on the record at the February 4, 2016 hearing, where Ms. Carlyon states that she obtained documents by way of discovery. Indeed, Ms. Carlyon initially filed an adversary complaint on August 29, 2014, on behalf of IFA and against Blanchard, *et al.* related to the same underlying transaction and occurrence [8:14-ap-01242-SC Adv. Dk. 1]. That complaint was dismissed without leave to amend on April 10, 2015 [8:14-ap-01242-SC Adv. Dk. 97].  IFA filed a second adversary complaint on October 10, 2016, against Blanchard, *et al.* alleging causes of action arising from the same underlying transaction and occurrence [8:15-ap-01394-SC Adv. Dk. 1]. That second complaint was dismissed without leave to amend on January 22, 2016 [8:14-ap-01242-SC Adv. Dk. 97]. Under these circumstances, Ms. Carlyon's request for permission to conduct additional discovery, which she made during the very last minute of the hearing on her Application, and only after the Court had given its own analysis, lacked a sufficient basis.

Ms. Carlyon was not impeded from conducting discovery in this contested matter. Any further delay in resolving this matter would result in prejudice to other parties in interest. Ms. Carlyon did not articulate what factual issues requiring discovery

would make a difference in the outcome. The denial of Ms. Carlyon's request does not harm IFA because the Court had sufficient undisputed evidence before it to rule on the Application without any further discovery.

## IV.    Conclusion

In summary, the Court finds that IFA has failed to establish its initial burden of stating a *prima facie* claim for administrative expense priority. The Court further finds that IFA has failed to meet its burden of proving statutory standing—that SCV's alleged breach of the Victorville Agreement gave rise to a "right to payment" to IFA.  The Court further finds that IFA has failed to meet its burden of proving that SCV was insolvent or rendered insolvent as a result of the transfer under. Finally, the Court finds that IFA has failed to meet its burden to prove that Blanchard engaged in "actual fraud." The Trustee's Evidentiary Objections are SUSTAINED. For all these reasons, IFA has failed to meet its burden of establishing an administrative claim against Blanchard's estate.

The Application is DENIED.

###

Date: March 1, 2016

Scott C. Clarkson
United States Bankruptcy Judge